[Civ. No. 9458. Third Dist. Dec. 15, 1958.]

JOHN SOLARI, Respondent, v. GIACOMO ONETO, as Administrator, etc., Appellant.

Huberty & Huberty for Appellant.

William C. Coffill for Respondent.

SCHOTTKY, J.—This is an appeal by Giacomo Oneto, as administrator of the estate of Andrea Daniele Oneto, deceased, from a judgment affirming the award of an arbitrator which determined the value of a partnership in which the deceased had a one-half interest.

In 1952, John Solari and the deceased Andrea Oneto formed a partnership which operated a tavern known as "Steve's Place." The articles of copartnership provided, among other things:

1. That proper books of account would be kept.

2. That an account of the stock, equipment, and other personal property of the business and of book debts would be taken and a statement of the affairs would be made yearly; and that the sums drawn by the partners would be charged to their share of the profits. It was also provided that each partner would sign duplicates of the statement of affairs, one copy of which would be written in the partnership books; that the accounts, as reflected in the statement of affairs, would not be reopened unless some manifest error would be found within six months; and that such statement would be conclusive evidence between the partners.

3. That the partnership would be dissolved in case of the death of a partner.

4. That in the event of the death of any partner, the surviving partner would have the exclusive right to purchase and buy out the deceased partner's interest for the "inventory value" at the time of the deceased partner's death, within ninety days of the date of the death. "Inventory value" was defined to mean the book value of the partnership, plus or minus a reasonable amount or value allowing for inflation or deflation. It was further provided that in the event of any dispute as to "inventory value" the matter of such dispute would be referred to arbitration as prescribed and set forth in the Code of Civil Procedure, and that the decision of the

arbitrators would be conclusive. (Code Civ. Proc., §§ 1280-1293.)

Following the death of Andrea Daniele Oneto, appellant Giacomo Oneto qualified as administrator of Andrea's estate. Solari had the books examined, determined that his deceased partner's interest in the business was worth $14,968.43, and then made an offer to the administrator to purchase the decedent's interest for that sum. The offer was refused, and after some negotiations Solari filed an application with the superior court for an order referring the dispute to arbitration. The application was opposed on the ground that there was no controversy between the parties which was the subject of arbitration; the answer denied that there was a refusal to perform under the terms of the agreement for arbitration, and also denied that any proper partnership books or statement of affairs existed which would provide a basis for establishing the book value as provided in the partnership agreement. The answer further stated that the agreement was vague as to the meaning of the term "inventory value," unless it was interpreted as fair market value, and it was alleged that the fair market value was $25,000. It was further stated that the only controversy was the proper interpretation of the articles of partnership which it was alleged was not the subject of arbitration.

The trial court, after a summary hearing, found that the "inventory value" of the partnership assets was a matter for arbitration. The court was of the opinion that more than a mere appraisal was involved since there would have to be a determination of the completeness of the partnership books of account. The court ordered arbitration and appointed an arbitrator who was instructed to settle by arbitration the "inventory value" of the assets, the book value plus or minus a reasonable amount for inflation, and that hearings be held in the matter.

The arbitrator had an impartial examination of the accounts made by a certified public accountant, held a hearing at which each of the parties and their respective counsel participated, received testimony, and made an award that the value of the assets and property of the partnership as of the date of death of the deceased partner was $18,167.63. Solari then sought an order affirming the award. The administrator sought an order vacating the award because of alleged error and evident miscalculation on the part of the arbitrator. The arbitrator filed an affidavit in which he asserted that through an error on his

part the amount found as the value of the partnership assets was one-half of the value found, and actually represented only the deceased partner's interest. The award was vacated and the matter resubmitted to the arbitrator, who was directed to set a time and place of hearing at which he should take such testimony, under oath, as appeared reasonably necessary to carry out the purpose of the order. The concluding paragraph of the order directed the arbitrator, after conducting such hearing as he deemed necessary, to prepare and submit his award to the court.

Thereafter, without conducting any further hearing, the arbitrator filed his award on rehearing as follows: "The book value of all of the assets and property of the partnership known as "Steve's Place," the partners of which consisting of John Solari and Andrea Daniele Oneto, as of the date of death of the said Andrea Daniele Oneto on January 21, 1957, be, and the same is hereby fixed and settled at the sum of Thirty-six Thousand Three Hundred Thirty-five and 45/100 ($36,335.45) Dollars, which sum includes plus or minus for inflation or deflation."

Petitioner John Solari made a motion to confirm the award on rehearing, and after a hearing the court made its order confirming the award and allowing the costs and expenses of said arbitration. The administrator's motion for a new trial was denied and this appeal followed.

■ Appellant's first contention is that "There was no valid operative agreement to arbitrate a controversy."

The language of the partnership agreement, as it relates specifically to the matter of arbitration, is as follows: "In the event of any dispute as to such value 'Inventory Value,' the matter of such dispute shall be referred to arbitration as prescribed and set forth in the Code of Civil Procedure of California, and the decision of such arbitrators is conclusive."

Appellant contends that this was a mere agreement to fix the value of the partnership property and relies heavily on *Bewick* v. *Mecham*, 26 Cal.2d 92 [156 P.2d 757, 157 A.L.R. 1277]. In that case a provision in a lease gave the lessee the option to purchase the land upon the expiration of the lease, at a price and terms then to be agreed upon between the parties, and if not agreed upon then to be fixed by arbitration. Each of the parties to select one arbitrator and the two selecting a third, which said arbitrators should fix such purchase price and the terms under which the purchase might be made.

Ultimately, the defendant therein refused to appoint an arbitrator, and on such refusal the plaintiff therein brought an action to have the court fix the purchase price and to decree specific performance of the contract. That defendant argued that the statutory remedies provided in the arbitration section of the Code of Civil Procedure had not been followed, and specifically, he pointed out that section 1283 of the Code of Civil Procedure allows the court to appoint an arbitrator if one party has failed to make an appointment upon demand of the other. The trial court held that this was not an agreement for arbitration but instead was an agreement for an appraisal, and, therefore, the statutory procedure did not apply.

In affirming the judgment, the Supreme Court said at page 97:

". . . It was not contemplated by the option agreement in the present case that the arbitrators should decide any controversy arising out of the option agreement or the refusal of the parties to perform. Their sole task was to determine the value of the land and to fix the purchase price accordingly and the installments for the payment of the credited part of the price. 'A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration.' (*Palmer* v. *Clark,* 106 Mass. 373, 389; see also *Luedinghaus Lumber Co.* v. *Luedinghaus,* 299 F. 111, 113.) There is nothing in the agreement to indicate that the arbitrators were to take evidence in a formal proceeding as a basis for their decision rather than their own opinion and judgment. . . ."

Appellant contends that the court erred in submitting the controversy to arbitration. Appellant states: ". . . The parties had not, by their agreement, directed that the arbitrator was to come in and test their books for adequacy. Their agreement contemplated that they would keep adequate and complete records. All that the arbitrator was to do was to fix the value revealed by these records as such was affected by the factors of inflation or deflation. The application of these factors of inflation or deflation do not present anything other than problems in valuation that any competent appraiser could take care of. Thus, in order to find some added task which might qualify this agreement for arbitration, the Court

had to assume powers and duties for the arbitrator which had not been granted to him by the parties.''

We do not regard the Bewick case as requiring a holding that the court erred in submitting the matter to arbitration. For the Bewick case also stated at page 97:

''. . . 'Submissions to determine values are of two kinds—first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment; second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion. In cases of the first class, it is usually held that the agreement is not properly a submission to arbitration and is not subject to the rules which govern arbitrators. . . .' ''

We believe that the court properly construed the agreement in the instant case as falling within the second class. We believe also that when the agreement provided that ''In the event of any dispute as to such value 'Inventory Value,' the matter of such dispute shall be referred to arbitration,'' it meant exactly what it said and implied, that the arbitrator or arbitrators should hold such hearings as were necessary in order to reach a decision.

■ For as stated by this court in *Downer Corp.* v. *Union Paving Co.*, 146 Cal.App.2d 708, at page 711 [304 P.2d 756]:

''It should be noted that it is now well established '. . . by the adoption of the 1927 statute, the Legislature intended to adopt a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate, and that in such cases the doctrines applicable to a common law arbitration were abolished.' (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal. App.2d 156 [260 P.2d 156].) This same question was discussed in 38 California Law Review 799. The author notes that while the common law may be applicable to oral contracts, he suggests that it is not applicable to agreements in writing. The writer further states that no special language is required but that the arbitration clause should provide that parties agree to accept the award as final and binding. 'It is reasonable that parties who voluntarily agree in writing to arbitrate should be bound by the statute and should not as an afterthought be permitted to escape from their contract through the portals of the common law.' (38 Cal.L.Rev., p. 809.) Thus, in *Snyder* v. *Superior Court*, 24 Cal.App.2d 263 [74 P.2d 782], it was agreed that in the event of a dispute between the parties, such dispute would be submitted to a named arbi-

trator 'for determination.' This court there held that to submit a dispute for determination is a tacit agreement to abide by that agreement. For as was there noted, there would be no reason to submit the dispute to an arbitrator other than for determination. Hence it necessarily follows that while the paragraph in question could probably have been drafted with more precision, there can be little question but that as the trial court found, the words 'any matter arising therefrom' relate back to the word 'Agreement,' and that thereby the arbitrators were authorized to decide any question concerning the joint venture agreements or arising therefrom, as well as the interpretation of the agreements; and that by the words, 'the decision of any two arbitrators shall be binding upon both parties,' the parties agreed to accept the award as final and binding on them. In this regard the court specifically found that in using the quoted phrases, it was the intent of the parties that any dispute arising under the agreements should be determined by arbitration, and that all of the matters and disputes which were submitted to and determined by the board of arbitrators arose out of said agreements and the performance thereof. . . .''

■ Appellant also contends that the arbitration clause could only be invoked if proper books of account and statement of affairs had been kept. It is alleged, and apparently not denied, that this was not done.

The court in its order of submission to arbitrator stated that:

''The said arbitrator shall settle by arbitration the book value of the properties of the partnership the subject matter of said agreement as of the date of death of Andrea Daniele Oneto on January 21, 1957, as determined by the books of said partnership, if any there be, 'plus or minus a reasonable amount or value allowing for inflation or deflation' as set forth in paragraph 12 of said Partnership Agreement.

. . . . . . . . . . . . .

''The said arbitrator shall set a time and place of hearing convenient to himself and the parties and shall subpoena such witnesses and take such testimony under oath as appears reasonably necessary to him in order to carry out the purposes of this Order and the intention of the parties under said agreement . . .''

It is evident that complete books and records of the business of the partnership were not kept, but we do not believe that this fact would defeat the operation of the clause in the

partnership agreement that ''In the event of any dispute as to such value 'Inventory value,' the matter of such dispute shall be referred to arbitration.'' We think that there is ample support for the trial court's finding that the partnership agreement was ''a valid written agreement to settle a disputed matter by arbitration, and that the controversy referred to in petitioner's application has arisen and does now exist as to the computation or determination of value referred to and defined as 'inventory value' in said 'Articles of Copartnership.' '' We believe that the fact that the agreement specifically mentioned ''arbitration as prescribed in the Code of Civil Procedure'' indicates clearly that the parties intended that the dispute should be settled by arbitration.

 The 1927 statute (Code Civ. Proc., §§ 1280-1293) was enacted by the Legislature to set up a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate. It was designed to encourage resort to arbitration and abolished many of the doctrines applicable to a common-law arbitration. It should be the policy of the law to encourage the settlement of business disputes by arbitration, and agreements which provide for arbitration should be given a liberal construction in furtherance of such policy.

Appellant contends also that the arbitrator exceeded his powers because he fixed the value according to such partnership records as he could find, plus oral and documentary evidence. We do not agree. The arbitrator in his award stated that ''your Arbitrator having examined and considered all of the evidence submitted, both oral and documentary, the records of said partnership and personal examination of the premises, and having further considered the matter of inflation or deflation, and being fully satisfied, now renders herewith in accordance with said Order of Submission, his award.''

 Appellant contends that the arbitrator was limited to the value as set forth on the books of the partnership; but where, as in the instant case, the books were not adequate to enable the arbitrator to determine the value, it was proper for him to hear and consider other evidence. For it was the duty of the arbitrator to settle by arbitration the dispute over the ''inventory value'' of the property of the partnership, and we are satisfied that it was the intention of the parties to the copartnership agreement that any such dispute should be settled by arbitration.

 Appellant contends further that the arbitrator erred in determining the value of the partnership after the vacation

of the original award and resubmission by the court because he failed to hold a hearing after resubmission. He relies on the rule that when an award is set aside the entire matter is reopened and the issues undetermined (*Film Technicians* v. *Color Corporation of America*, 141 Cal.App.2d 553 [297 P.2d 86]), and that a rehearing is a retrial of the issues, and it presumes notice and an opportunity to be heard. (*Yee* v. *State Board of Equalization*, 16 Cal.App.2d 417 [60 P.2d 322].) The rule stated is correct, but in the instant case the award was vacated because the arbitrator made an error in his computations. All that was required was a mechanical recomputation. Any error in not providing a rehearing could hardly have been prejudicial to the appellant since he had an opportunity to present apparently all the evidence he had at the first hearing. Furthermore, appellant does not assert that he was prejudiced by the failure of the arbitrator to hold a second hearing.

Appellant's final contention is that the award is vague because it did not describe the partnership assets. The award determined the value of the assets of the partnership. The judgment related these as land, improvements, stock in trade, business, fixtures, equipment, furniture and furnishings, on-sale and off-sale general liquor licenses of the business and property known as "Steve's Place." It must be borne in mind that the arbitrator was to value the property to determine the price the surviving partner was to pay for the deceased partner's share. While the award might have been more detailed, we believe it was sufficiently definite.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 8, 1959.