**BLOUNT BROTHERS CONSTRUCTION COMPANY**

v.

**The UNITED STATES.**

No. 249–61.

United States Court of Claims.

July 16, 1965.

As Amended Aug. 18, 1965.
As Further Amended Sept. 28, 1965.

John L. Kilcullen, Washington, D. C., for plaintiff. McNutt, Dudley & Easterwood, Washington, D. C., of counsel.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

This action arises out of a contract entered into by plaintiff and the Department of the Navy's Bureau of Yards and Docks. The contract provided for the construction by plaintiff of a rotating arm and maneuvering basin at the David W. Taylor Model Basin, Carderock, Maryland. The claims set forth in plaintiff's petition are made on behalf of certain of plaintiff's subcontractors.

Defendant has moved for summary judgment. The "Severin doctrine," upon which defendant's motion is based, derives its name from Severin v. United States, 99 Ct.Cl. 435 (1943), cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). The rule has been explained as follows:

> * * * a prime contractor may sue the Government for damages incurred by one of its subcontractors through the fault of the Government * * * only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future. These are the only ways in which the damages of the subcontractor can become, in turn, the damages of the prime contractor, for which recovery may be had against the Government. [Citations omitted.] * * *

J. L. Simmons Co. v. United States, 158 Ct.Cl. 393, 397, 304 F.2d 886, 888 (1962). Regarding the case at bar, defendant asserts that the pertinent subcontracts relieved plaintiff of any liability

with respect to the claims being asserted.[1]

Since plaintiff acquiesces in the Government's attack upon count two of the petition, we need not consider the issues raised by that count. Plaintiff denies, however, that count one comes within the Severin rule. The facts relevant to count one can be summarized as follows: The contract was awarded to plaintiff on May 25, 1956, and plaintiff immediately commenced work. Thereafter, the Navy determined that revision of the design of the project would be necessary. By letter of February 19, 1957, Commander J. M. Page, the Resident Officer in Charge of Construction, directed plaintiff to stop work on the manufacture of certain wavemaker parts which would "be eliminated if the contemplated change order to the wavemakers is consummated." On April 11, 1957, the hold order was extended to other parts of the wavemakers.

Plaintiff's written acknowledgment, sent to Commander Page on May 7, 1957, stated in part:

Allis-Chalmers Mfg. Co. through Walter Truland Corp., our subcontractor for this work, have [sic] agreed to accept a hold order on this equipment at no additional cost to the Government, subject to the condition that this work shall not be re-entered at a later date. If at a later date, it is requested that the analog study, or engineering for, or manufacture of the equipment for the wavemaker valve drive system be reinstated, a charge will be made to compensate for increased costs of manufacture between the effective date of this hold order and the date of re-entry.

If this portion of our contract should be cancelled, a charge will be made to cover design costs of this equipment to effective date of hold order.

We have placed a temporary hold on this work, pending your advice as to your acceptance of the conditions noted herein.

On May 10, 1957, Commander Page replied, "It is considered that the condition by which you accept the subject hold order is adequately covered by the change order provisions of the contract."

Ultimately, the Navy determined not to effect redesign of the project. On February 7, 1958, 12 days short of 1 year after issuance of the initial hold order, the resident officer in charge of construction advised plaintiff that the hold orders were rescinded. Plaintiff was instructed to proceed on the components of the wavemaker system in accord with the original drawings and specifications, and plaintiff did so.

Subsequently, plaintiff requested that the contracting officer issue a change order to compensate plaintiff and its subcontractors for the additional costs which resulted from the cessation of work. On September 10, 1958, the contracting officer denied plaintiff's claim. Plaintiff then took an appeal to the Armed Services Board of Contract Appeals (hereinafter the "ASBCA" or "Board"). The Board, in a decision dated June 29, 1960, sustained plaintiff's appeal in part. However, the ASBCA held that certain items, such as additional overhead, were not of the type compensable under the contract; and, to that extent, the claim of plaintiff was dismissed. There followed the present action.

As indicated previously, plaintiff rejects the assertion of defendant that the Severin doctrine applies to count one of the petition. First, it is plaintiff's position that the exculpatory clause contained in the subcontracts relates solely to delay damages resulting from breaches of the

---

1. Each of the subcontracts contained the following provision:

"Contractor [plaintiff] shall not be liable to the Sub-Contractor for delay to Sub-contractor's work by the act, neglect or default of the Owner, * * * or on account of any acts of God, or any other cause, beyond the Contractor's control; but Contractor will cooperate with Sub-Contractor to enforce any just claim against the Owner or Architect for delay."

contract.[2] Secondly, according to plaintiff, count one alleges not an action for breach of contract, but rather a claim which comes within the terms of the contract. It follows, under this view, that, with regard to the subject matter of count one, plaintiff has *not* been relieved of liability to its subcontractor. Therefore, plaintiff concludes that the Severin rule, which is premised upon the non-liability of the general contractor, does not bar the present action.[3]

The initial question to be determined is whether plaintiff's construction of the exculpatory language is correct. On no prior occasion has this court been faced with the necessity of deciding this issue.[4]

The Severin doctrine has been discussed in cases involving claims which arose under the respective contracts. E. g., Garod Radio Corp. v. United States, 158 Ct.Cl. 596, 601, 307 F.2d 945 (1962); J. W. Bateson Co. v. United States, 143 Ct.Cl. 228, 229, 163 F.Supp. 871 (1958). However, in each of the cited cases, the prime contractor was permitted to maintain an action on behalf of a subcontractor, since there was no evidence that the prime contractor had been relieved of lia-

bility. Thus, in neither case was the court required to construe exculpatory language. Cf. Blount Bros. Constr. Corp. v. United States, Ct.Cl., 346 F.2d 962 (June 11, 1965).[5]

Defendant cites a number of decisions in which a suit for the benefit of a subcontractor was held to be barred because the general contractor had been absolved of liability to the subcontractor. F. H. McGraw & Co. v. United States, 131 Ct.Cl. 501, 509, 130 F.Supp. 394 (1955); Continental Ill. Nat'l Bank & Trust Co. v. United States, 126 Ct.Cl. 631, 640, 115 F.Supp. 892 (1953); Continental Ill. Nat'l Bank & Trust Co. v. United States, 121 Ct.Cl. 203, 245, 101 F.Supp. 755, cert. denied, 343 U.S. 963, 72 S.Ct. 1057, 9 L.Ed. 1361 (1952); Pearson, Dickerson, Inc. v. United States, 115 Ct.Cl. 236, 264 (1950); James Stewart & Co. v. United States, 105 Ct.Cl. 284, 330, 63 F. Supp. 653 (1946); Severin v. United States, supra, at 442. In each of these cases, the prime contractor was attempting to assert an action for breach of contract.[6] According to plaintiff, the above cases are not controlling when the claim

2. The clause is quoted in note 1, supra.

3. In support of its position, plaintiff cites decisions of the ASBCA which hold that the Severin doctrine is inapplicable to claims based upon a contractual provision for equitable adjustment of the contract. A. DuBois & Sons, Inc., ASBCA No. 5176, 60–2 BCA ¶2750 (1960); Morrison-Knudsen Co., ASBCA No. 4929, 60–2 BCA ¶2799 (1960).

4. As defendant points out, this court deleted from its *per curiam* opinion in Kaiser Industries Corp. v. United States, Ct.Cl. No. 488–59 (Jan. 22, 1965), 340 F.2d 322 (1965), that portion of the opinion of the trial commissioner which dealt with the relation of the Severin doctrine to claims arising under a contract. However, contrary to defendant's assertion, no inference should be drawn from this deletion. This court merely found it unnecessary to decide the question.

5. Blount Bros. Constr. Corp. v. United States, supra, although based upon the same contract as the present case, involved an unrelated cause of action. This court rejected the Government's argu-

ment that the suit was barred by the Severin doctrine. (Slip op., p. 4.) The exculpatory clause (identical to that quoted in note 1, supra) was held to be inapplicable since the plaintiff was not seeking *delay* damages, but sought an equitable adjustment for extra work. Therefore, the plaintiff-prime contractor was permitted to bring the suit.

In contrast, the claim in the present case is founded upon Government-caused delay.

6. In the following actions for breach of contract, the Severin issue was raised, but the court determined that the prime contractor had not been relieved of responsibility to the subcontractor: J. L. Simmons Co. v. United States, supra; Barnard-Curtiss Co. v. United States, 157 Ct.Cl. 103, 301 F.2d 909 (1962); Donovan Constr. Co. v. United States, 138 Ct.Cl. 97, 149 F.Supp. 898, cert. denied, 355 U.S. 826, 78 S.Ct. 34, 2 L.Ed. 2d 39 (1957); Warren Bros. Roads Co. v. United States, 123 Ct.Cl. 48, 105 F. Supp. 826 (1952). See also United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944).

is one coming within the terms of the prime contract.

■ We consider the distinction which plaintiff seeks to draw to be valid in this case. As plaintiff points out, the exculpatory clause was intended to insulate the general contractor from the possibility of being (1) liable to the subcontractor for delay caused by the Government, yet (2) unable to recover from the Government. The need for such a protective clause is clear when the contractor's remedy against the Government is an action for breach of contract. On the other hand, the same necessity does not exist when the contract provides that the Government will compensate the contractor for such delay. Thus, we accept the contention of plaintiff that the exculpatory clause did not affect plaintiff's liability to its subcontractor insofar as *claims under the prime contract* were concerned. Therefore, if the present claims are encompassed by the terms of plaintiff's contract with the Navy, then the Severin rule is not a bar.

■ In Cannon Constr. Co. v. United States, Ct.Cl. No. 89–57 (June 7, 1963), slip op., p. 11, 319 F.2d 173 (1963), this court stated: "The * * * ['Suspension of Work'] clause converts an action for damages into a matter properly for determination and payment under and pursuant to the contract in the form of an equitable adjustment." Unlike the contract involved in Cannon Constr. Co., the contract between plaintiff and the Navy did not contain a standard "Suspension of Work" clause. However, plaintiff asserts that the exchange of correspondence which preceded plaintiff's acceptance of the hold orders constituted an agreement to add to the contract a provision similar in effect to the standard suspension clause. We agree with plaintiff.

In its May 7, 1957, letter to Commander Page, plaintiff made clear the conditions upon which it would accept the hold orders; i. e., plaintiff required that, if

the original plans were later reinstated, plaintiff would be compensated for the increased costs caused by the cessation of work. The reply of Commander Page must be construed as an agreement to the conditions stated by plaintiff. Plaintiff was not bound to accept the hold orders (which eventually resulted in a delay of almost 1 year), but plaintiff did so. In view of these circumstances, it would not be proper to permit the Government to disregard the terms of the supplemental agreement providing for the reimbursement of plaintiff.

We are not persuaded by the points which defendant raises in opposition to plaintiff's argument. Defendant observes that plaintiff's letter referred to Allis-Chalmers Manufacturing Company, the sub-subcontractor of Walter Truland Corporation, plaintiff's electrical subcontractor, but that plaintiff made no reference to Green Fuel Economizer Company, the subcontractor involved in the present suit. Defendant overlooks the fact that plaintiff's letter goes on to mention not only the analog study (a responsibility of Allis-Chalmers), but also the engineering and manufacturing of the wavemaker valve drive system. The present claim relates to the latter category and, therefore, comes within the supplemental agreement.

■ Next, defendant contends that, assuming *arguendo* the letters were intended to constitute an amendment to the contract, Commander Page lacked authority to make any amendment.[7] The documents presently before the court suggest that, even if Commander Page lacked actual authority to amend the contract, his actions were ratified by his superiors. There are also indications of a delegation of authority to him. In any event, defendant has not made a sufficient showing in support of its assertion.

Defendant makes the additional contention that, at the time in question, no one in the Navy was authorized to insert

7. Defendant has offered a number of exhibits pertaining to the authority of Commander Page as well as to the general policy regarding local officers in charge of construction. These documents do not dispose of the possibilities of authority implied in fact or of the ratification of unauthorized acts.

a clause providing financial adjustments for the suspension of work. Defendant has demonstrated that it was not until July 1, 1960 (*i. e.,* subsequent to the events involved in this suit), that the Bureau of Yards and Docks began to incorporate into its contracts a standard clause relating to "Delay-Damages." [8] However, we cannot conclude from this fact that, prior to July 1, 1960, it was impossible, under any circumstances, for Bureau personnel to agree to compensate a contractor for delays. To the contrary, the facts of the present case show that such a supplemental agreement was made, and we are not willing to ignore it.

In conclusion, this court rejects the Government's contention that, on the basis of the *Severin* rule, defendant is entitled to summary judgment as to count one of the petition. Accordingly, with regard to count one, defendant's motion for summary judgment is denied and the case is returned to the trial commissioner for appropriate proceedings. As to count two of the petition, defendant's motion for summary judgment is granted and to this extent the petition is dismissed.

---

8. One of defendant's exhibits is a Bureau of Yards and Docks publication, dated April 21, 1960, entitled "Provision in Construction Contracts Covering 'Price Adjustment for Suspension, Delay or In-terruption of the Work.'" The new clause was to become a general provision in construction contracts exceeding $25,000 in price.