**UNIVERSITY OF ALASKA, Appellant,**

v.

**MODERN CONSTRUCTION, INC.,**
**Appellee.**

**No. 1977.**

Supreme Court of Alaska.

May 31, 1974.

---

John W. Pletcher, III, of Merdes, Schaible, Staley & DeLisio, Anchorage, for appellant.

Richard R. Cole, Fairbanks, Bruce T. Rinker, of DeGarmo, Leedy, Oles & Morrison, Seattle, Wash., for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

ERWIN, Justice.

This appeal presents the question whether the superior court properly confirmed an arbitration award.

Appellee Modern Construction, Inc., was prime contractor for construction of a "Campus Activity Center" building on the appellant University of Alaska's College campus. The $3,480,000 contract between Modern and the University empowered the University to alter the scope of the work during the period of construction. These changes, as well as necessary adjustments to the contract price, were to be authorized by a "change order" issued by the University or its architect.[1] The contract also provided that disputes between the parties would be referred initially to the University's architect, and, if necessary, ultimately resolved by arbitration.[2]

1. Art. 12 of the contract provided in part:
12.1.1 The Owner, without invalidating the Contract, may order Changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and the Contract Time being adjusted accordingly. All such Changes in the Work shall be authorized by Change Order, and shall be executed under the applicable conditions of the Contract Documents.
12.1.2 A Change Order is a written order to the Contractor signed by the Owner and the Architect, issued after the execution of the Contract, authorizing a Change in the Work or an adjustment in the Contract Sum or the Contract Time. Alternatively, the Change Order may be signed by the Architect alone, provided he has written authority from the Owner for such procedure and that a copy of such written authority is furnished to the Contractor upon request. The Contract Sum and the Contract Time may be changed only by Change Order.

2. Art. 2 of the contract stated in part:
2.2.6 The Architect will be, in the first instance, the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor. The Architect will, within a reasonable time, render such interpretations as he may deem necessary for the proper execution or progress of the Work.
2.2.7 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.
2.2.8 All interpretations and decisions of the Architect shall be consistent with the intent of the Contract Documents. In his capacity as interpreter and judge, he will exercise his best efforts to insure faithful performance by both the Owner and the Contractor and will not show partiality to either.

. . . .

2.2.10 Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.9 and except any which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.7.5 and 9.7.6, shall be subject to arbitration upon the written demand of either party.

. . . .

Art. 7 of the contract provided in part:
7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
7.10.2 Notice of the demand for arbitration shall be filed in writing with the other part to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, and in all other cases within a reasonable time after the claim,

During construction the University expanded the project to include construction of an underground "utilidor" (utility corridor). After Modern completed this work the architect issued a change order allowing Modern an additional $110,000. Modern signed the order and returned it with a separate letter explaining that it was impossible to then determine the extent of delay caused by the extra work and that Modern reserved the right to subsequently claim extra "impact" costs.

Later, defects were discovered in certain concrete beams used in construction of the building itself. These defects stemmed from architectural design errors, as was admitted by the architect. Modern corrected the beam problem, and two additional change orders allowing $65,000 were issued to compensate Modern for this extra work. One order granted a 35-day extension on the main contract which Modern had requested. The other order allowed no extra time, because Modern had asked for none. In contemporaneous letters to the architect, Modern again reserved the right to later claim additional sums for delay caused by the beam work.

After all contract work was completed, accepted and paid for, Modern presented the University with additional claims for impact costs incurred due to delays attributable to the University and its architect during the course of construction. The University rejected these claims, evidently because it felt that impact costs due to delay were consequential damages not compensable under the contract.[3]

Modern then demanded arbitration of its claims. The University went to arbitration under objection, restating its position that Modern's claims were not covered by the contract and were therefore not arbitrable. Hearings were held in Fairbanks before a panel of three arbitrators chosen under the auspices of the American Arbitration Association. Both parties were ably represented by counsel.

Modern submitted six claims to the panel, representing approximately $950,000. The claims were generally as follows:

1. $480,000 for impact expenses due to delay caused by the utilidor work.

2. $61,000 for impact expenses due to delay caused by the beam repair.

3. $9,000 for other repair work made necessary by the delays.

4. $49,000 for general manpower and utility costs due to the delays.

5. $46,000 for additional costs incurred by Modern's subcontractors due to the delays, and for payment of which Modern claimed to be ultimately responsible.

6. $304,000 for interest, taxes, bond, insurance, overhead and profit costs.

After the hearings, the arbitrators awarded Modern a lump sum of nearly $384,000 "in full settlement of all claims submitted to this arbitration." No alloca-

---

dispute or other matter in questoin has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

3. As to delays, the contract provided:
8.3.1 If the Contractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or the Architect, or by any employee of either, or by any separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Contractor's control, or by delay authorized by the Owner pending arbitration, or by any cause which the Architect determines may justify the delay, then the Contract time shall be extended by Change Order for such reasonable time as the Architect may determine.
8.3.2 All claims for extension of time shall be made in writing to the Architect no more than fifteen days after the occurrence of the delay; otherwise they shall be waived. In the case of a continuing cause of delay only one claim is necessary.
8.3.3 If no schedule or agreement is made stating the dates upon which written interpretations as set forth in Subparagraph 1.2.5 shall be furnished, then no claim for delay shall be allowed on account of failure to furnish such interpretations until fifteen days after demand is made for them, and not then unless such claim is reasonable.
8.3.4 This Paragraph 8.3 does not exclude the recovery of damages for delay by either party under other provisions of the Contract Documents.

tion of the award among the various claims was made, and there was no mention of findings of fact or conclusions of law made by the arbitrators in reaching their decision.

The University's attorney wasted little time in requesting a clarification of the award. He wrote to the regional director of the American Arbitration Association requesting that the arbitrators be directed to allocate their award among the various claims made by Modern. Apparently the University's request for clarification of the award was denied.

Next the Univeristy filed a motion to vacate the arbitrators' award in the superior court. Thereafter it also moved to compel clarification of the arbitrators' award. Modern filed opposition to both motions, and itself moved the court to confirm the award. After hearing arguments, the superior court ruled that it had no authority to order segregation of the award. After further hearings, the superior court issued an order denying the University's motion and confirming the award. The University then brought this appeal.

▇ Appellant first argues that the superior court erred in failing to compel clarification of the award. In denying the University's motion, the superior court ruled that AS 09.43.090 did not give it au-

thority to compel arbitrators to clarify the award.[4] Apparently the court reasoned that, under the statute, discretion to decide whether or not to clarify the award was properly vested in the arbitrators rather than in the court.[5]

The court's ruling on this point was error. Section 9 of the Uniform Arbitration Act, from which AS 09.43.090 is taken, was intended to empower the court to order clarification.[6] In our view, AS 09.-43.090 clearly authorizes the superior court to return an award to the arbitrators for clarification. We hold the error here to be harmless, however, because of our further conclusion that the court properly confirmed the award as made.

The University also contends that the decision below to confirm the award was erroneous because the arbitrators exceeded their powers when they considered Modern's claims. The University insists, as it has throughout this dispute, that the terms of the contract afforded Modern no right to claim "impact" damages due to delays. Consequently, it contends that none of Modern's claims were subject to arbitration and that the panel had no power to consider them. If the arbitrators exceeded their powers in this regard, the award should have been vacated under AS 09.43.120(a) (3) or (5).[7]

---

4. AS 09.43.090 states in part:
 *Modification of award by arbitrators.* On application to the arbitrators by a party or, if an application to the court by a party is pending under §§ 110, 120, or 130 of this chapter on submission to the arbitrators by the court under the conditions the court may order, the arbitrators may modify or correct the award upon the grounds stated in § 130(a)(1) and (3) of this chapter, or for the purpose of clarifying the award.

5. The court made reference to the language of AS 09.43.090 that ". . . the arbitrators *may* modify or correct the award . . . for the purpose of clarifying the award." (emphasis added)

6. One commentator has observed:
 . . . If the award is before the court on a motion of the character indicated, [to confirm or vacate] the court in its discretion may return the award to the arbitrators to make such changes as the act permits and under such conditions as the court specifies. (footnote omitted)

Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vand.L.Rev. 685, 703 (1957). *See also* the following cases construing similar state arbitration statutes to the same effect: LaVale Plaza, Inc. v. R. S. Noonan, Inc., 378 F.2d 569, 574 (3d Cir. 1967) (Pennsylvania statute) ; Solari v. Oneto, 166 Cal.App.2d 145, 333 P.2d 218, 224 (1958) ; Weiss v. Metalsalts Corp., 15 A.D.2d 46, 222 N.Y.S.2d 7, 8 (App.Div.1961), aff'd, 11 N.Y.2d 1042, 230 N.Y.S.2d 32, 183 N.E. 2d 913 (1962).

7. AS 09.43.120 provides in part:
 *Vacating an award.* (a) On application of a party, the court shall vacate an award if

 . . . . .

 (3) the arbitrators exceeded their powers ;

 . . . . .

 (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under § 20 of this chapter and the party did not participate in the arbitration hearing without raising the objection.

The powers of arbitrators are confined to those conferred upon them by the arbitration agreement, subject, of course, to further limitations imposed by the law of the jurisdiction.[8] Here, the contractual arbitration clause empowered the arbitrators to decide "[a]ll claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof . . . ."[9] This agreement necessarily gave the arbitrators power to interpret the contract; otherwise it would have been impossible for them to determine which claims or disputes they could properly arbitrate.[10] The arbitrators concluded that the intent of the parties, as evidenced by their written contract, was to arbitrate any claims Modern might have for damages caused by delays attributable to the University.[11]

When an award is attacked under the Uniform Arbitration Act on the grounds that the arbitrators exceeded their powers through erroneous interpretation of the contract, the reviewing court should determine

. . . whether the construction of the contract made by the arbitrator[s] is a reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction of the

contract made by the arbitrator[s] was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award.[12]

In Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.,[13] the Appellate Court of Illinois was faced with the question whether a contractor's claim for damages due to the owner's delays was arbitrable. The arbitration clause in the contract there involved stated in part:

It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects.[14]

The only mention of delay damages in the contract was a clause protecting the contractor from being compelled to pay liquidated damages for delays caused by the owner.[15] In affirming a lower court decision to stay arbitration, the court first noted that "in Illinois for an issue to be the subject of arbitration, it must be included in the contract in clear and unequivocal language."[16] Examining the contract language, the court found no provision dealing with the contractor's right to claim damages due to owner delays.[17] Conse-

---

8. Lundgren v. Freeman, 307 F.2d 104, 109–110 (9th Cir. 1962); Continental Materials Corp. v. Gaddis Mining Co., 306 F.2d 952, 954 (10th Cir. 1962); Liberty Mutual Fire Ins. Co. v. Loring, 91 Ill.App.2d 372, 235 N.E. 2d 418, 420–421 (Ill.App.1968).

9. Note 2 *supra*.

10. Thomasville Chair Co. v. United Furniture Workers of America, 233 N.C. 46, 62 S.E.2d 535, 537–538 (N.C.1950).

11. Early in the arbitration proceedings the University moved for dismissal of Modern's claims, alleging that they were not arbitrable under the contract. The arbitration panel denied the motion.

12. Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vand.L. Rev. 685, 706 (1957). *See* Mogge v. Dist. 8 Int'l Ass'n of Machinists, 454 F.2d 510, 513 (7th Cir. 1971); Communications Equip. Workers, Inc. v. Western Elec. Co., Inc., 320 F.Supp. 1277, 1280 (D.Md.1970).

13. 109 Ill.App.2d 224, 248 N.E.2d 289 (1969).

14. *Id.* at 291.

15. *Id.* at 292.

16. *Id.* at 290.

17. In this regard, the court stated:
It is one thing to excuse the contractor from liquidated damages because of delays due to acts of the owner—it is quite another thing to provide for liquidated damages to the contractor for delays due to acts of the owner. The former as noted was provided for in the contract. There is nothing that we have been able to find nor pointed out to us in the contract documents which requires Jarman to pay the contractor [for] any damages for losses occasioned by delays or the changes of the owner.
*Id.* at 292. *See* Silver Cross Hosp. v. S. N. Nielsen Co., 8 Ill.App.3d 1000, 291 N.E. 2d 247, 248 (1972). *But cf.* Paschen Contractors, Inc. v. John J. Calnan Co., 13 Ill. App.3d 485, 300 N.E.2d 795, 799 (1973).

quently, the court held that the contractor's claims were not " 'disputes arising in connection with this contract' " within the meaning of the arbitration clause, and were therefore not arbitrable.[18]

██ We agree with the Illinois court that where the parties have clearly agreed to arbitrate only those "disputes arising in connection with this contract" a particular claim is not arbitrable if it is nowhere mentioned in the contract. However, we do not agree that in all cases a particular claim is not arbitrable unless it is so designated by "clear and unequivocal" contract language. Alaska's arbitration act evinces a strong public policy in favor of arbitration.[19] We would therefore allow ambiguous contract terms to be construed in favor of arbitrability where such construction is not obviously contrary to the parties' intent, especially where, as here, the party contesting arbitrability drafted the contract.[20] We are convinced, however, that the critical contract language in the present case would reasonably support the interpretation given it by the arbitra-

tors even under the more restrictive Illinois standard.

██ The arbitration clause here mandated arbitration of "[a]ll claims, disputes and other matters in question arising out of this Contract or the breach thereof . . . ."[21] Section 2.10 of article 2 of the contract expressed the parties' further intent that "[a]ny claim, dispute or other matter that has been referred to the Architect . . . shall be subject to arbitration upon the written demand of either party."[22] Finally, section 3 of article 8, which specifically addressed delays attributable to the owner, provided in section 3.4:

> This Paragraph 8.3 does not exclude the recovery of damages for delay by either party under other provisions of the Contract Documents.[23]

In view of this specific language we agree with the superior court that the arbitrators' decision on the arbitrability of Modern's claims for "impact" damages due to delays was not based upon an unreasonable interpretation of the contract.[24]

---

18. 248 N.E.2d at 292.

19. Nizinski v. Golden Valley Elec. Ass'n, Inc., 509 P.2d 280, 283 (Alaska 1973).

Although arbitration agreements were given some effect at common law the attitude of the courts toward them was mainly hostile until a change in judicial philosophy and the advent of commercial arbitration statutes combined to change public policy on the desirability of arbitration. Comment, Arbitration and Award—Commercial Arbitration in Oregon, 26 Ore.L.Rev. 280, 281 (1974) ; Symposium on Arbitration, 83 U. of Penn.L.Rev. 119–245 (1934).

Alaska reflected this early view, Marthia v. Jiminez, 4 Alaska L.J. 20 (Super.Ct.1966), until the present arbitration statute was enacted in 1968. At that time Alaska adopted the Uniform Arbitration Act with its broad policy favoring arbitration. 1968 Journal of the Alaska House of Representatives 861–62 ; see Layne-Minnesota Co. v. Regents of Univ. of Minn. 266 Minn. 284, 123 N.W.2d 371 (Minn.1963).

20. The rule in insurance contract cases is that, due to an inherent disparity in bargaining power between the insurer who drafts the contract and the insured, ambiguous coverage and exclusion clauses must be resolved in favor

of coverage wherever possible. United Fire Ins. Co. v. Schnabel, 504 P.2d 847, 851 n. 13 (Alaska 1973) ; Marwell Const., Inc. v. Underwriters at Lloyd's, London, 465 P.2d 298, 313 (Alaska 1970) ; Pepsi Cola Bottling Co. v. New Hampshire Ins. Co., 407 P.2d 1009, 1013 n. 4 (Alaska 1965) ; Lumbermen's Mut. Cas. Co. v. Continental Cas. Co. 387, P.2d 104, 109 (Alaska 1963). We recognize that arbitration clauses are not necessarily imposed under adhesional circumstances. Nevertheless, we feel that the policy of our arbitration statute will be best advanced by a rule of construction similar to that employed to further public policy in insurance situations.

21. Note 2 *supra.*

22. *Id.*

23. Note 3 *supra.*

24. We note in passing that AS 09.43.020 provides for court determination of the issue of arbitrability prior to rendition of an award and before the parties have subjected themselves to the effort and expense of arguing the merits of the dispute to the panel. AS 09.43.-020(b) states:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement

Next the University contends that the arbitrators exceeded their powers by awarding compensation based upon the claims of Modern's subcontractors, who were not parties to the contract. Had it been alleged that the panel attempted to adjudicate the rights and liabilities of the subcontractors, who were neither parties to the contract nor represented at the hearings, close inspection would, indeed, be warranted. The University, however, has not made such allegations. Instead, it argues that the panel exceeded its powers by awarding Modern an unknown amount in reliance upon the unverified claims of subcontractors. The thrust of the University's argument is that, since the record is silent as to how the panel arrived at the lump sum award, it is possible that the award was based in part upon unverified subcontractor claims. Consequently, the University contends that the award must be presumed invalid.

We disagree with appellant's argument and decline to adopt this presumption as the law in Alaska. Instead, we conclude that whenever possible an arbitration award rendered in the form required by our statute[25] is presumptively valid and shall be upheld without inquiry into the merits of the dispute. It is our belief that "[t]he law now favors arbitration with a minimum of court interference."[26] We find nothing in the record to rebut the presumption of validity due the award.[27]

---

to arbitrate. The issue, when in substantial and bona fide dispute, shall be immediately and summarily tried and the stay ordered if no agreement is found to exist. If found for the opposing party, the court shall order the parties to proceed to arbitration.

At least one court has implied that the possibility of waiver or estoppel exists where a party fails to seek court review of the arbitrators' decision on arbitrability until after rendition of the award. Bd. of Ed. of Community School Dist. No. 4 v. Champaign Ed. Ass'n, 15 Ill.App.3d 335, 304 N.E.2d 138, 142–143 (1973). The issue has not been raised here, and we do not decide it.

25. AS 09.43.080(a) sets out the minimum requirements as to the form of an award:
Award. (a) The award shall be in writing and signed by the arbitrators joining in the award. The arbitrators shall deliver a copy to each party personally or by registered mail, or as provided in the agreement.

Most courts have held that this type of language does not require the arbitrators to submit written findings of fact or conclusions of law. E. g., Fidelity & Cas. Co. of New York v. Cooke, 357 Mass. 763, 256 N.E.2d 447, 448 (1970); see also William B. Lucke, Inc. v. Spiegel, 131 Ill.App.2d 532, 266 N.E.2d 504, 507–508 (1970).

26. Nizinski v. Golden Valley Elec. Ass'n, 509 P.2d 280, 283 (Alaska 1973).

27. Even assuming that there is evidence in the record to rebut this presumption, we note a substantial line of authority holding that a prime contractor may, on behalf of a subcontractor, maintain a claim against the government for an equitable adjustment due to government-caused delay where the claim is provided for in the prime contract and any exculpatory language releasing the prime contractor from liability is limited to damages resulting from a breach of the contract. Owens-Corning Fiberglas Corp. v. United States, 419 F.2d 349, 455–458, 190 Ct.Cl. 211 (1969); Blount Bros. Constr. Co. v. United States, 348 F.2d 471, 172 Ct.Cl. 1 (1965); 8 J. McBride and L. Wachtel, Government Contracts § 49.30 [4] (1971, Supp.1974). Compare Severin v. United States, 99 Ct.Cl. 435, cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). In the present case, the contract provided for equitable adjustments for delay through the mechanism of arbitration, and Modern's subcontractors released it from all liability in excess of the amount it would recover from the University on their behalf. Regarding a similar contract and exculpatory provision in Blount Bros., the court stated:
As plaintiff points out, the exculpatory clause was intended to insulate the general contractor from the possibility of being (1) liable to the subcontractor for delay caused by the Government, yet (2) unable to recover from the Government. The need for such a protective clause is clear when the contractor's remedy against the Government is an action for breach of contract. On the other hand, the same necessity does not exist when the contract provides that the Government will compensate the contractor for such delay. Thus, we accept the contention of plaintiff that the exculpatory clause did not affect plaintiff's liability to its subcontractor insofar as claims under the prime contract were concerned. 348 F.2d at 474 (emphasis in original).

▮▮▮▮ Finally, the University claims that the arbitrators exceeded their powers by ignoring legal precedent on the issues of (1) recoverability of "consequential" damages; (2) accord and satisfaction; (3) proof of liability for delays; and (4) propriety of the "total cost—total time" method for computing the amount of Modern's damages. The general rule in both statutory and common law arbitration is that arbitrators need not follow otherwise applicable law when deciding issues properly before them, unless they are commanded to do so by the terms of the arbitration agreement.[28] Since the relevant clause here contains no such command, the arbitrators were free to determine the merits of Modern's claims under their own notions of fairness.[29]

The judgment of the superior court is affirmed.

---

We realize that this line of authority pertains to standardized government contracts. But it nevertheless persuades us that in this case the arbitrators' acceptance into evidence of the subcontractors' claims did not constitute reversible error. We do not reach the question of whether such claims could properly be considered by arbitrators in determining a prime contractor's damages.

28. In re Reynold's Estate, 221 N.C. 449, 20 S.E.2d 348, 351 (1942); Ramonas v. Kerelis, 102 Ill.App.2d 262, 243 N.E.2d 711, 717 (1968).

29. Lentine v. Fundaro, 29 N.Y.2d 382, 328 N.Y.S.2d 418, 421, 278 N.E.2d 633, 635 (1972). It should be noted that a different rule applies where the arbitrators have shown intent to adhere to legal doctrine but through mistake have misapplied the law. Country Mut. Ins. Co. v. Nat'l Bank of Decatur, 109 Ill.App.2d 133, 248 N.E.2d 299, 302 (1969). There seems to be no indication that such is the case here. *See also* Note, The Enforceability of an Arbitrator's Award of a Penalty, 52 Colum.L.Rev. 943 (1952); Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv.L.Rev. 681 (1950).