BOARD OF EDUCATION, FAIRBANKS
NORTH STAR BOROUGH SCHOOL
DISTRICT, Appellant,

v.

Ruth EWIG and Fairbanks Education
Association, Appellees.

No. 4253.

Supreme Court of Alaska.

March 21, 1980.

Doris R. Ehrens and Marcus R. Clapp, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Michael C. Geraghty and Robert B. Groseclose, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

The appellants contend that an arbitrator resolving a dispute under a labor contract between the Board of Education, Fairbanks North Star Borough School District (hereinafter District), and the Fairbanks Education Association (hereinafter FEA) is not empowered to award money damages for breach of the contract. We affirm the decision of the superior court upholding the arbitrator's award.

The case arose from a grievance of appellee Ewig, a member of FEA, against her employer, the District, under the collective bargaining agreement. The dispute submitted to arbitration concerned § 402 of the agreement, entitled "Involuntary Transfer." [1] That section provides that the District must give notice before the end of the school year to teachers whom it intends to involuntarily transfer or reassign for the following year, and also guarantees other rights to teachers subject to involuntary transfer. After the end of the 1976–77 school year and several days prior to the beginning of the 1977–78 school year, Ewig was notified that she had been reassigned to teach one section of Spanish and four sections of math at North Pole Junior/Senior High School, rather than the five sections of math she had previously taught. Ewig filed a grievance according to the provisions of the Agreement, complaining that the District had failed to follow the procedural requirements of § 402 before reassigning her to teach Spanish. The agreement states:

A "Grievance" shall mean a claim by a grievant that a dispute or disagreement exists involving interpretation or application of the terms of this Agreement or of

---

1. The relevant section provides:

    Involuntary Transfer:

    Although the Board [District] and the Association [FEA] recognize that some involuntary transfer of teachers from one school to another or reassignment within a school may be unavoidable, they also recognize that frequent transfer or reassignment of teachers is disruptive of the educational process and interferes with optimum teacher and student performance. Therefore, they agree as follows:

    1. Notice of an involuntary transfer or reassignment for the coming school year shall be given to teachers as soon as practicable and not later than the last day of school unless agreed to by the teacher. Transfer or reassignment may be made during the school year where the needs of the District, *as determined by the School Board require.*

    2. When transfer or reassignment becomes necessary, a teacher's area of competence, major and/or minor field of study, and length of service in the District *will be considered in determining* which teacher is to be transferred or reassigned.

    3. An involuntary transfer or reassignment will be made only after a meeting, if requested by the teacher, between the teacher involved and the Superintendent, or his designee, at which time the teacher will be informed of the reasons which will, at the request of the teacher, be reduced to writing and placed in the teacher's personnel file.

    4. The latest list of open positions in the school system will be made available to all teachers being involuntarily transferred or reassigned. Such teachers may request the positions, in order of preference, to which they desire to be transferred. Teachers being involuntarily transferred or reassigned shall be considered before those seeking voluntary transfer or reassignment. [Emphasis in original.]

the terms of the employment contract between the individual teacher and the Board.

After various steps have been completed, it provides for binding arbitration as follows:

If the Association or the Board determines that the grievance involved the interpretation, meaning, or application of any provision of this Agreement, within thirty (30) school days after receipt of the decision by the Superintendent, in Step 2, Item 3, the Association or the Board, upon written notice to the other, may submit the grievance to arbitration under and in accordance with the rules of the American Arbitration Association. If any question arises as to arbitrability, such questions will first be ruled upon by the arbitrator selected to hear the dispute. In the event that a case is appealed to an arbitrator on which he has no power to rule, it shall be referred back to the parties without decision or recommendation on its merits.

The dispute was not resolved by the informal grievance procedure, and ultimately went to arbitration. The arbitrator found for Ewig, and ordered the District to return her to her former teaching schedule within two weeks, and to pay her an additional one-fifth of her usual per diem rate for the entire period during which she taught Spanish, in compensation for the extra time spent as a result of the District's failure to follow the prescribed procedure.

The District acceded to the arbitrator's finding of contractual breach, but applied to the superior court for an order vacating the monetary portion of the award on the ground that it exceeded the arbitrator's powers to make such an award. The superior court confirmed all aspects of the arbitrator's decision. The District appeals from that judgment.

■ The District cites AS 09.43.120 in support of its right to appeal. However, AS 09.43.010 provides in part:

[T]his chapter does not apply to a labor-management contract unless it is incorporated into the contract by reference or its application is provided for by statute.

Since the contract does not incorporate the statute, it is inapplicable. In the absence of statutory restrictions, parties are free to contract for the terms of arbitration they desire. *Anchorage Medical & Surgical Clinic v. James*, 555 P.2d 1320, 1321 (Alaska 1976). Here, the parties' agreement specified: "There shall be no appeal from the arbitor's decision if it is within the scope of his authority." This provision has the same effect as the statutory requirement of AS 09.43.120, which states in part:

(a) On application of a party, the court shall vacate an award if . .

(3) the arbitrators exceeded their powers . . . .

■ This is also in accord with our prior decisions delineating the authority of arbitors: *Alaska State Housing Authority v. Riley Pleas, Inc.*, 586 P.2d 1244, 1247 (Alaska 1978); *Anchorage Medical & Surgical Clinic v. James*, 555 P.2d at 1322; *University of Alaska v. Modern Construction Co.*, 522 P.2d 1132, 1137 (Alaska 1974); *Nizinski v. Golden Valley Electric Association, Inc.*, 509 P.2d 280, 283 (Alaska 1973). Consequently, we believe that the District can appeal the question of whether the arbitrator exceeded his power in ordering monetary damages.

There is ample authority for the proposition that arbitrators generally have authority to fashion any remedy necessary to the resolution of the dispute. Although *International Brotherhood of Teamsters, Local 959 v. King*, 572 P.2d 1168 (Alaska 1977), was decided under federal labor law, we observed there that "[the] federal rule is similar to our decision broadly construing the powers of arbitrators as a corollary of the strong public policy favoring arbitration," *citing Anchorage Medical & Surgical Clinic.*[2]

---

**2.** In the *Teamsters* case, we held that the dispute was arbitrable, but that arbitration had been waived. The plaintiff ultimately recovered $197,000 for both tort and contract claims, which strongly suggests that the arbitrator would have been empowered to award damages if the dispute had gone to arbitration.

The United States Supreme Court, in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960), held:

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

That case upheld the arbitrator's award of back pay and reinstatement to employees where the collective bargaining agreement had expired before arbitration.

█ In *Mogge v. District 8, International Association of Machinists*, 454 F.2d 510 (7th Cir. 1971), a collective bargaining agreement provided for arbitration but did not provide for a specific remedy in case of wrongful discharge. An award of reinstatement and back pay was affirmed, the circuit court stating:

The reported decisions make it abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy.

*Id.* at 514 (citations omitted). We think this is the logical rule to follow. If an arbitrator does not have the power to fashion remedies, but only to adjudicate the breach, then parties will be forced to go to court to seek complete relief. Such an interpretation runs counter to all of the policies which arbitration serves, and would effectively vitiate most arbitration agreements. We prefer to encourage arbitration as a rapid and inexpensive means of resolving disputes. *Anchorage Medical & Surgical Clinic v. James*, 555 P.2d 1320 (Alaska 1976); *University of Alaska v. Modern Construction Co.*, 522 P.2d 1132 (Alaska 1974).

We now turn to the interpretation of the arbitration agreement between the parties in the instant case to determine whether the arbitrators were empowered to award monetary damages.

Our cases make it very clear that arbitration is to be favored by Alaska courts, and we will interfere with the decision of an arbitrator only "in the most egregious instances." *Anchorage Medical & Surgical Clinic v. James*, 555 P.2d at 1323. In that case, we held:

Unless it is not reasonably possible to maintain that a particular clause may bear an interpretation given to it by the arbitrators, the courts will not meddle in the arbitrators' interpretation.

█ The District contends that the arbitrator's award exceeded his powers because it modified the agreement, and, in effect, increased Ewig's salary. The agreement specifies:

The arbitrator will be without power or authority to make any decisions which require the commission of an act prohibited by law or which is violative of the terms of this Agreement. The arbitrator shall have no power or authority to make any decision which modifies, alters or amends the terms of this Agreement. He shall have no power to change any practice, policy or rule of the Board nor to substitute his judgment for that of the Board as to the reasonableness of any such practice, policy, rule or any action taken by the Board.

We find no merit to the District's contention. In one sense, any award of damages could be regarded as an increase in salary. Here, the arbitrator was not endeavoring to alter the teacher's salary, but to award her compensation for the breach of the agreement. As a result of that breach, she was required to prepare on short notice and teach a course that she had not taught since graduation from college six years previously. She had to develop course materials, outlines and lesson plans as the course was new and involved students of varying abili-

ty levels. This required the development of five separate lesson plans so that students would benefit according to their level of understanding. It is not for us to evaluate the arbitrator's award. A reading of his opinion and award makes it abundantly clear that it does not attempt to alter salaries, but awards damages for the breach of the agreement.

The collective bargaining agreement between the FEA and the District provides that any grievance involving "the interpretation, meaning, or application of any provision of this Agreement" is subject to arbitration after informal procedures have failed. The contract deals primarily with the compensation and working conditions of teachers. Accordingly, virtually any dispute involving its "interpretation, meaning, or application" will involve monetary issues. It seems unlikely that the parties intended, when agreeing on the arbitration clause, to exclude these issues from consideration by the arbitrator. Certainly a disagreement regarding a teacher's classification for salary purposes might require the arbitrator to award back pay, or to rule that the District must henceforth pay the teacher a higher salary. Such an award is not violative of the terms of the agreement, but merely enforces the applicable provisions. It fol-

lows that the arbitrator in this case, once he had determined that the District had failed to follow the reassignment procedures spelled out in the contract, was empowered to award Ewig compensation for the damage caused her by the District's breach.

■ Once we have determined that the award was within the arbitrator's authority as defined by the contract, we need not inquire into the merits of the award or the specific authority for it. *University of Alaska v. Modern Construction Co.*, 522 P.2d at 1139–40.[3]

■ The District also appeals from the superior court's award of $1,000.00 attorney's fees to the appellees, contending that the award exceeds the schedule of Civil Rule 82.[4] But Rule 82(a)(2) allows. deviation from the schedule where the money judgment is not an accurate criterion for attorney's fees. Here Ewig was awarded relief in addition to money damages by the arbitrator. Furthermore, the policy favoring arbitration dictates that the appellees here should be adequately compensated for the cost involved in defending the District's appeal to the superior court, where the District specifically agreed in the contract to regard the arbitrator's decisions as binding.[5]

---

3. We do not discuss the District's numerous other contentions. We find them to be without merit.

4. The relevant section provides:

(a) *Allowance to Prevailing Party as Costs.* (1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

|  | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $2,000 | 25% | 20% | 15% |
| Next $3,000 | 20% | 15% | 12.5% |
| Next $5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

The District contends that under this rule appellees may only recover $504.99 on a judgment of $2,699.95.

5. The Agreement § 840(v) provides in part:

6. There shall be no appeal from an arbitrator's decision if it is within the scope of his authority. It shall be final and binding on the Association, its members, the employee or employees involved and the Board. The Association shall discourage any attempt of its members and shall not encourage or cooperate with any of its members, in any appeal to any court or labor board from a decision of an arbitrator nor shall the Association or its members by any means attempt to bring

When a trial court departs from the fee schedule of Rule 82, the reasons should be stated. When, as here, no reasons are set forth, we normally would feel compelled to remand for the trial court to set forth those reasons.[6] Here, under the rule, Ewig would have been entitled to $640 rather than $1,000. In view of the obvious reasons for increasing the fees, we see no necessity for a remand.

We further believe that the District should be discouraged from expending large amounts of time and public money pursuing appeals such as this for which they can cite no direct authority or persuasive policy reasons. By requiring a teacher to litigate in the superior and supreme courts, the district may render illusory the award of the arbitrators. Accordingly, we order that the District bear the appellees' full costs and attorney's fees incurred in the appeal to this court.

The decision of the superior court is AFFIRMED in all respects.

about the settlement of any grievance subject to arbitration.

6. *Alaska Airlines v. Sweat*, 568 P.2d 916, 937–38 (Alaska 1977); *Fairbanks Builders, Inc. v. Sandstrom Plumbing & Heating, Inc.*, 555 P.2d 964, 966 (Alaska 1976).