*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KALINDI McALPINE, | ) | |
| | ) | Supreme Court No. S-14891 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-04798 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STEVEN PRIDDLE, | ) | |
| | ) | No. 6866 - February 21, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Kalindi McAlpine, pro se, Alachua, Florida, Appellant. Steven J. Priddle, Law Offices of Steven J. Priddle, pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

This appeal arises from an attorney's fee dispute arbitration conducted under Alaska's Revised Uniform Arbitration Act (Revised Arbitration Act).[1] The two primary issues relate to the appropriate standard of review when a party asserts an

---

[1]     AS 09.43.300-.595. The Revised Arbitration Act governs arbitration agreements made on or after January 1, 2005. AS 09.43.300(a).

arbitration decision was procured by fraud and the possible application of non-statutory public policy grounds to vacate an arbitration award. We adopt the federal standard for reviewing a claim that an arbitration decision was procured by fraud, and we conclude the arbitration panel's decision that there was no fraud is not reviewable. We also conclude that on the facts found by the arbitration panel, there is no basis to vacate the arbitration decision on public policy grounds. We therefore affirm the superior court's decision to confirm the arbitration decision.

## II.    DISCUSSION

### A.    Background

The background facts underlying this attorney's fee dispute are fully set out in the arbitration panel's decision, attached as Appendix A, and the superior court's decision to confirm the arbitration decision, attached as Appendix B. A few basic facts are set out here for context.

Jierum Duarte was arrested on federal drug conspiracy charges in November 2008. Duarte asked his girlfriend, Kalindi McAlpine, to contact attorney Steven Priddle about representing Duarte in the federal criminal proceedings and in a concurrent state probation proceeding. Both Duarte and McAlpine later asserted that Priddle told them he would charge up to $25,000 if the case did not go to trial, up to $50,000 if the case went to trial, and up to $75,000 if the case went to trial and required hiring experts.

McAlpine and Priddle signed a written agreement for Priddle to represent Duarte. McAlpine and Duarte later claimed they were never provided a copy of the signed agreement. The day after the agreement was signed, McAlpine gave Priddle $75,000 cash wrapped in a plastic grocery bag.

Duarte's case was set for trial in February 2009, but he entered a guilty plea the morning of trial. Following Duarte's sentencing, McAlpine asked Priddle to refund "at least" $50,000 of the fee because the case did not go to trial. In October 2010 McAlpine petitioned for an attorney's fee arbitration with the Alaska Bar Association.[2] The arbitration panel issued a decision in June 2011, concluding that the $75,000 fee was reasonable under the facts and circumstances of the case.

During the arbitration hearing, Priddle offered into evidence the three-page written fee agreement that he asserted was the one McAlpine signed in November 2008. McAlpine disputed the document's authenticity. McAlpine testified that she recalled signing a one-page agreement — not a three-page agreement — and that the agreement Priddle presented did not reflect the parties' prior verbal agreement to a graduated fee.

---

[2]    *See* Alaska Bar R. 34(a)-(b), providing:

(a) Fee Dispute Resolution Program Established. It is the policy of the Alaska Bar Association to encourage the amicable resolution of fee disputes between attorneys and their clients which fall within the Bar's jurisdiction and, in the event such resolution is not achieved, to arbitrate and determine such disputes. To that end, the Board of Governors (hereinafter "[B]oard") of the Alaska Bar Association (hereinafter "Bar") hereby establishes through the adoption of these rules of fee dispute resolution (hereinafter "rules"), a program and procedures for the arbitration of disputes concerning any and all fees paid, charged, or claimed for professional services by attorneys.

(b) Mandatory Arbitration for Attorneys. Arbitration pursuant to these rules is mandatory for an attorney when commenced by a client. For the purpose of these rules, a "client" includes any person who is legally responsible to pay the fees for professional services rendered by an attorney.

McAlpine also testified she could not confirm that her purported signature and initials on the agreement were authentic.

The fee agreement contained a provision specifying, "A flat fee of $75,000.00 will be charged. . . . This flat-rate is earned and owing upon execution of this fee agreement. . . . THIS FLAT-RATE FEE, OR ANY PART THEREOF, IS NON-REFUNDABLE AND WILL NOT BE REFUNDED/RETURNED UNDER ANY CIRCUMSTANCES." The panel noted that "[t]he written fee agreement on its face violates Ethics Opinion 2009-1, which concludes that it is misleading to describe a fee retainer in any way as 'non-refundable.' "[3] But the panel concluded that the agreement "accurately reflected the terms of the fee agreement entered into between the parties[,] satisfied the requirement of the Code of Professional Conduct that all fee agreements be in writing[, and] clearly contemplates a fixed fee and not a graduated fee."

The panel then analyzed whether the agreed-upon $75,000 fee was reasonable for the work performed.[4] The panel ultimately concluded that "$75,000 was a reasonable fee to charge in this case based upon all of the factors contained in Bar Rule 35(a)." But the panel referred the matter to bar counsel to investigate whether disciplinary proceedings were appropriate for Priddle's use of the "non-refundable" and "already earned" language in the fee agreement and his acceptance of a large sum of cash that may have come from illegal sources.

McAlpine filed a "motion to amend" the panel's decision in the superior court in January 2012. McAlpine advanced several arguments for overturning the arbitration decision: (1) the panel failed to analyze the reasonableness of the fee in

---

[3]    *See* Alaska Bar Ass'n Ethics Comm., Ethics Op. 2009-1 (2009).

[4]    *Cf.* Alaska Bar R. 35(a) (setting out considerations for reasonableness of attorney's fees).

relation to work actually performed; (2) the panel failed to weigh the fact that neither McAlpine nor Duarte was given a copy of the agreement; (3) Priddle misled Duarte on his experience with federal drug cases; (4) Priddle's fee was not reasonable; (5) Priddle did not provide an accounting of time spent on the case; (6) the panel could not assess the reasonableness of the fee without timekeeping records; (7) the panel should have held Priddle to a "higher standard" in assessing the reasonableness of the fee charged; (8) the panel should have given greater weight to the fact that the fee agreement contained provisions in violation of the rules of professional conduct; (9) Priddle coerced his client into entering the fee agreement and ultimately pleading guilty; and (10) the fee agreement considered by the panel was fraudulent.

The superior court reviewed McAlpine's petition under the narrow judicial review standards of the Revised Arbitration Act.[5] The court rejected most of McAlpine's arguments as falling outside the statutory judicial review provisions and therefore being unreviewable. The court acknowledged that McAlpine's fraudulent agreement argument fell within one of the statutory review provisions — that "the award was procured by corruption, fraud, or other undue means."[6] The court concluded, however, that the panel's finding that the document was not fraudulent was not reviewable. Concluding that McAlpine "ha[d] not established any of the statutory grounds to vacate or modify an arbitration award as set forth in AS 09.43.500 or .510," the superior court affirmed the arbitration decision.

McAlpine, appearing pro se, appeals.

---

[5]     *See* AS 09.43.500, .510.

[6]     *See* AS 09.43.500(a)(1).

## B.      Standard Of Review

We "review de novo the superior court's decision to confirm [an] arbitration award."[7]

## C.      McAlpine's Appeal

"[W]e consider pro se [papers] liberally in an effort to determine what legal claims have been raised."[8]   McAlpine generally challenges the merits of the panel's decision; she also appears to claim that the arbitration decision was fraudulently obtained and that the panel violated public policy by giving effect to an "unconscionable" fee agreement.[9]

Judicial review of attorney's fee arbitration awards is governed by the Revised Arbitration Act; a court can review the award only on the grounds listed in the statute.[10]   Under the Revised Arbitration Act, a court shall vacate the award if:

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) there was

---

**7**      *State v. Pub. Safety Emps. Ass'n* (*PSEA 2010*), 235 P.3d 197, 201 (Alaska 2010) (citing *State v. Alaska Pub. Emps. Ass'n* , 199 P.3d 1161, 1162 (Alaska 2008)).

**8**      *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012) (citing *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1150 (Alaska 2009)).

**9**      *See State v. Pub. Safety Emps. Ass'n* (*PSEA 2011*), 257 P.3d 151, 158 (Alaska 2011) ("Following a path taken by the U.S. Supreme Court and many other state jurisdictions, we now . . . adopt the exception to enforcing arbitration decisions where doing so would violate an explicit, well defined, and dominant public policy." (quoting *PSEA 2010*, 235 P.3d at 203) (internal quotation marks omitted)).

**10**      Alaska Bar R. 40(a)(2); *Haeg v. Cole*, 200 P.3d 317, 320 (Alaska 2009) (adopting supeior court order); *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989).

(A) evident partiality by an arbitrator appointed as a neutral arbitrator;

(B) corruption by an arbitrator; or

(C) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) an arbitrator refused to postpone the hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to AS 09.43.420, so as to prejudice substantially the rights of a party to the arbitration proceeding;

(4) an arbitrator exceeded the arbitrator's powers;

(5) there was not an agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under AS 09.43.420(c) not later than the beginning of the arbitration hearing; or

(6) the arbitration was conducted without proper notice of the initiation of an arbitration as required under AS 09.43.360 so as to prejudice substantially the rights of a party to the arbitration proceeding.[11]

A court shall modify an award if:

(1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;

(2) the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision on the claims submitted; or

---

[11] AS 09.43.500(a).

(3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.[12]

**1.      The merits of the arbitration panel's decision are unreviewable.**

McAlpine asks us to review the merits of the arbitration panel's decision on many of the same grounds she raised before the superior court. Her merits challenge can be distilled into five main points. She argues that the panel: (1) erred in finding that the written fee agreement superseded the alleged verbal fee agreement; (2) erred in determining that the written fee agreement was not invalidated by Priddle's failure to give McAlpine a copy or explain the fee; (3) erred in determining the fee was reasonable because it failed to consider all the Bar Rule 35(a) factors; (4) gave Priddle's witnesses' testimony improper weight; and (5) could not have properly assessed the fee's reasonableness because Priddle did not account for the time he worked on the case. The superior court considered several variations of these arguments and concluded that all were unreviewable.

McAlpine asserts that the superior court erred in determining it lacked authority to review the panel's decision except under the statutory grounds. But we repeatedly have rejected requests for heightened review of attorney's fee arbitration awards.[13] Under our precedent, neither the panel's factual findings nor its legal

---

[12]      AS 09.43.510(a).

[13]      *Butler v. Dunlap*, 931 P.2d 1036, 1040 (Alaska 1997) (rejecting request to review attorney's fee arbitration decision under arbitrary and capricious standard); *A. Fred Miller v. Purvis*, 921 P.2d 610, 618 (Alaska 1996) (holding attorney's fee arbitration without judicial review for factual or legal errors does not violate due process); *Breeze*, 778 P.2d at 217 (rejecting request to review attorney's fee arbitrator's factual findings for gross error).

conclusions are reviewable.[14] The superior court therefore applied the correct standard in concluding that McAlpine's challenges to the panel's decision's merits were not reviewable. For the same reason, we will not review the merits of the panel's decision on appeal.

> **2.** **The superior court properly determined it could not review the arbitration panel's conclusion that the fee agreement was not fraudulent.**

McAlpine also asserts that the panel relied on a fraudulent copy of the fee agreement supplied by Priddle. Whether an award was procured by fraud is one of the statutory grounds for reviewing an arbitration award.[15] The superior court acknowledged that McAlpine had raised a statutory ground on which it could review the award, but it concluded that "the arbitration panel's finding of fact that the fee agreement document was not falsified, manufactured, or otherwise illegitimate . . . is not reviewable by the court."

We have not articulated the proper standard of review under the Revised Arbitration Act for determining whether an arbitration award was procured by fraud.

---

[14] *See Haeg*, 200 P.3d at 320; *Breeze*, 778 P.2d at 217; *see also Univ. of Alaska v. Modern Const., Inc.*, 522 P.2d 1132, 1140 (Alaska 1974) ("The general rule in both statutory and common law arbitration is that arbitrators need not follow otherwise applicable law when deciding issues properly before them, unless they are commanded to do so by the terms of the arbitration agreement." (citing *Ramonas v. Kerelis*, 243 N.E.2d 711, 717 (Ill. App. 1968); *In re Reynold's Estate*, 20 S.E.2d 348, 351 (N.C. 1942))).

[15] AS 09.43.500(a)(1). McAlpine does not expressly invoke the Revised Arbitration Act, but does claim that Priddle committed "fraud" in presenting the panel with a forged agreement. *See Wilkerson v. State, Dep't of Health & Soc. Servs.*, 993 P.2d 1018, 1022 (Alaska 1999) (explaining pro se litigant's failure to identify and apply precise legal test not fatal when test is well established and easily applied).

Federal courts applying a similar Federal Arbitration Act provision[16] require a party seeking an arbitration award's vacatur to "show that the fraud was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence."[17]

Under the federal standard's first prong, a court will not independently review an arbitration award for fraud when the arbitrators already considered and resolved the fraud claim[18] because fraud "necessarily raises issues of credibility which have already been before the arbitrators once."[19] It follows that a court should give deference to arbitrators' credibility determinations on fraud claims.

Fifteen states and the District of Columbia have adopted the Revised Uniform Arbitration Act.[20] Courts in these jurisdictions generally have followed the

---

[16]    *Compare* 9 U.S.C. § 10(a)(1) (2012) (court may vacate arbitration award "where the award was procured by corruption, fraud, or undue means"), *with* AS 09.43.500(a)(1) (court shall vacate arbitration award if "the award was procured by corruption, fraud, or other undue means").

[17]    *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986) (citing *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982)).

[18]    *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992) ("[W]here the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple."); *cf. Johnson v. Wells*, 73. So. 188, 191-92 (Fla. 1916) (holding evidence that records presented in arbitration were falsified was reviewable by trial court for fraud because such evidence was not considered by arbitrators nor available to plaintiff during arbitration).

[19]    *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 35 (2d Cir. 1951).

[20]    UNIF. ARBITRATION ACT (2000), 7(1A) U.L.A. 1 (Supp. 2013) (Table Of Jurisdictions Wherein Act Has Been Adopted) (adopted by Alaska, Arizona, Arkansas, (continued...)

federal standard for determining whether an arbitration award was procured by fraud. Courts in Hawaii, Nevada, North Dakota, and Utah expressly adopted the federal standard in reviewing claims brought under those states' versions of the Revised Uniform Arbitration Act fraud provision.[21] Other courts have applied the federal standard to arbitration fraud claims under an identical vacatur provision in the original Uniform Arbitration Act.[22] Because Alaska's fraud provision is nearly identical to that of the Federal Arbitration Act, and most other states that have adopted the Revised Uniform Arbitration Act apply the federal standard, we conclude that Alaska courts should apply the federal standard in reviewing a claim that an arbitration award was procured by fraud.[23]

Under the federal standard the superior court correctly concluded that the arbitration panel's finding regarding the fee document's authenticity is not reviewable;

---

[20]    (...continued)
Colorado, District of Columbia, Hawaii, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Utah, and Washington).

[21]    *See Low v. Minichino*, 267 P.3d 683, 690-92 (Haw. App. 2011); *Sylver v. Regents Bank, N.A.*, 300 P.3d 718, 721-22 (Nev. 2013); *MBNA Am. Bank, N.A. v. Hart*, 710 N.W.2d 125, 129 (N.D. 2006); *Fleming v. Simper*, 158 P.3d 1110, 1112-13 (Utah App. 2007).

[22]    *See* UNIF. ARBITRATION ACT (1956), 7(1A) U.L.A. 9 (Supp. 2013) (Table Of Jurisdictions Wherein Act Has Been Adopted); *Davenport v. Dimitrijevic*, 857 So.2d 957, 961 (Fla. Dist. App. 2003); *West v. Heart of the Lakes Constr., Inc.*, No. C5-01-1823, 2002 WL 1013529, at *4 (Minn. App. May 21, 2002); *Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 67 (Tex. App. 2010). *Compare* UNIF. ARBITRATION ACT § 12(a)(1) (1956), 7(1A) U.L.A. 514 (2009) (requiring court to vacate award if "[t]he award was procured by corruption, fraud or other undue means"), *with* UNIF. ARBITRATION ACT § 23(a)(1) (2000), 7(1A) U.L.A. 77 (2009) (requiring court to vacate award if "the award was procured by corruption, fraud, or other undue means").

[23]    *See Lafarge Conseils Et Etudes*, 791 F.2d at 1339.

the panel considered the fraud allegation and made credibility findings. We therefore affirm the superior court on this issue and likewise decline to review the panel's finding regarding fraud.

### 3. The arbitration panel's decision does not enforce a nonrefundable fee provision in violation of public policy.

In *PSEA 2011* we adopted a non-statutory exception to enforcing arbitration awards when doing so would violate an "explicit, well defined, and dominant" public policy.[24] McAlpine appears to argue on appeal that the panel's award should be vacated because it enforces a contract that violates public policy.[25]

McAlpine generally complains that Priddle's putative $75,000 flat fee is "unconscionable" because it violates Alaska Bar Association Ethics Opinions and amounts to pay for work not done. But the panel did not give effect to the "nonrefundable" aspect of the fee agreement's flat fee provision. The panel interpreted the flat fee provision as allowing the $75,000 fee to be refundable to the extent it was unearned and therefore unreasonable, in compliance with Ethics Opinion 2009-1.[26] The panel acknowledged the "nonrefundable" term was unenforceable, noting that the term on its face violated the Ethics Opinion. The panel's subsequent determination that the

---

[24] 257 P.3d 151, 158-60 (Alaska 2011) (adopting public policy exception from *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983) and *E. Associated Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62-63 (2000)).

[25] McAlpine also appears to have properly raised these arguments before the arbitration panel and the superior court, preserving them for appeal. Neither the panel nor the superior court expressly ruled on the merits of the public policy argument.

[26] The Ethics Opinion states "[e]ven if characterized as nonrefundable, an unearned fee must be refunded." Alaska Bar Ass'n Ethics Comm., Ethics Op. 2009-1 (2009).

$75,000 flat fee was reasonable reflects its conclusion that the fee was not "unearned" and did not need to be refunded. In addition, the panel referred Priddle to bar counsel because the "nonrefundable" term "*misleads* clients about their ability to fire an attorney and obtain a refund so they can seek other representation" (emphasis added). This statement implies the panel believed the fee agreement established a refundable fee notwithstanding its "nonrefundable" terms.

Under this interpretation, the panel did not enforce a contract in violation of public policy because the panel interpreted the contract to provide that the fee was refundable; the panel read the improper "nonrefundable" term out of the contract. The public policy exception we adopted in *PSEA 2011* requires a reviewing court to assess the contract "as interpreted by" the arbitrator in determining whether the court should refrain from enforcing the arbitration award.[27] Because the panel interpreted the flat fee in the agreement to be refundable, and refundable flat fees do not violate public policy, the panel's award does not violate public policy and should not be vacated.

## III.  CONCLUSION

For the foregoing reasons, the superior court's confirmation of the arbitration decision is AFFIRMED.

---

[27]  *W.R. Grace*, 461 U.S. at 766 (citing *Hurd v. Hodge*, 334 U.S. 24, 35 (1948)), *cited with approval in PSEA 2011*, 257 P.3d at 156.

## BEFORE THE ALASKA BAR ASSOCIATION
## FEE REVIEW COMMITTEE
## THIRD JUDICIAL DISTRICT

| | |
|---|---|
| KALINDI McALPINE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   File No. 2010F039 |
| | ) |
| STEVEN J. PRIDDLE, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

## OPINION OF ARBITRATORS[*]

### I.    Case Background, Jurisdiction and Parties

This case was heard by the undersigned Arbitrators on April 25, 26, and 28, 2011.

The petitioner was Kalindi McAlpine.  She participated in the proceeding by telephone.  The Panel concluded she had standing to bring this petition because she entered into the fee agreement with the respondent and paid the fees incurred in this case. McAlpine is the girlfriend of Jierum Duarte (see below).  They have one child together.

The respondent was Steven J. Priddle, Esq.  Priddle participated in the arbitration in person.

Priddle represented Duarte in the underlying criminal cases.  Duarte was incarcerated in California at the time of the hearing and participated in portions of the proceeding by telephone.  Duarte could not participate in the entire proceeding because

---

[*]    This decision has been edited to conform to the technical rules of the Alaska Supreme Court.  The fee agreement underlying this arbitration was attached to the decision and referred to as "Exhibit J"; the exhibit itself has been omitted.

of limitations on his access to the telephone. Duarte waived any attorney/client privileges necessary for the adjudication of the fee arbitration.

None of the parties were represented by independent counsel. Petitioner McAlpine called herself and Duarte as witnesses. Duarte testified by telephone. Respondent called himself as a witness, as well as Joyce del Rosario, Christie Koldeway, Nicoli Bailey, and Sarah Martin. The parties had an opportunity to cross-examine all witnesses.

## II. Statement of the Case

Respondent Priddle offered into evidence a written fee agreement purportedly signed by McAlpine. The document was marked as Exhibit J, and admitted into evidence. Despite the existence of this written document there was a great deal of conflict in the testimony between the parties about the circumstances leading up to the engagement of Priddle by Duarte and McAlpine and the ultimate terms of the agreement.

Duarte was arrested in early November of 2008, on federal drug conspiracy charges. The exact date of arrest was subject to dispute, but court documents confirm the arrest was made on November 12, 2008. Duarte asked McAlpine to assist him in retaining an attorney.

At Duarte's direction, McAlpine contacted Steven Priddle, seeking to hire him for the purpose of defending the federal drug conspiracy charges as well as potential probation revocation proceedings that were expected in Alaska State Court. McAlpine testified that she believed the first time she met with Priddle in his office was November 13, 2008 because she gave him a credit card on which he charged $1,600. McAlpine produced a Visa Card account statement showing a $1,600 charge to Priddle on November 13, 2008. Priddle testified that this $1,600 charge was to cover his initial investigation of the case and that the $1,600 fee was superseded by the subsequent written agreement between the parties. There was no written engagement agreement

signed by the parties on the date that the $1,600 Visa Card charge was made. The parties agreed, however, that they subsequently entered into a new agreement for Priddle to represent Duarte on the pending cases. The parties also agreed that Priddle later refunded $1,600 to McAlpine for the initial Visa Card charge that was superseded by the agreement and payment.

The parties agree that Priddle visited Duarte in jail on several occasions to discuss Duarte's representation. Duarte testified that Priddle agreed to take the case and would charge $25,000 if the case did not go to trial; $50,000 if the case went to trial; and $75,000 if the case went to trial and experts were hired. Duarte said that he never saw a written fee agreement and never signed a fee agreement.

Duarte further testified that he hired Priddle because he understood that Priddle had special expertise in federal drug cases. In retrospect Duarte said that he doesn't think that Priddle had such expertise. Duarte also testified that he was "scared" into hiring Priddle because Priddle had told him that his family could be in trouble and there was a possibility that his son could be taken away. Duarte said he was afraid to talk to his girlfriend McAlpine on the phone and was worried that she might somehow get into trouble. According to Duarte, Priddle suggested that his son not visit him in jail and that McAlpine might want to leave the state and stay with friends or family until the case was over.

McAlpine also testified that the parties reached a verbal agreement under which Priddle would be paid $25,000 for his services if Duarte changed his plea before trial; $50,000 if the case went to trial; and $75,000 if the case went to trial and experts were hired. She said that she also understood that Priddle had special expertise in federal drug cases.

McAlpine further testified that she was told by Priddle that her home might be the subject of a federal search warrant and if she had a substantial amount of cash in

her home it might be confiscated as evidence in the Duarte drug conspiracy case and could also be used to implicate McAlpine in the case.

Priddle testified that he and McAlpine signed the written fee agreement on November 17, 2008, the date that appears on the document. (Exhibit J) Priddle denied that the parties reached a prior verbal agreement about the representation that was different from the terms of the written agreement. He also denied that he held himself out as having any special expertise as an attorney because the Code of Professional Conduct forbids attorneys from claiming special expertise in any particular area of the law.

According to the terms of the written agreement, Duarte was to pay "a flat fee of $75,000" for the representation regardless of whether it went to trial or not. The description of services contained in the agreement was, "Fed Conspiracy, etc." Priddle testified that Exhibit J was the standard form fee agreement that he always used with clients at the time. Several of Priddle's staff witnesses corroborated this testimony. The form had several different options for payment under different paragraphs that could be selected and initialed by the parties. The options included: 4a. hourly fees; 4b. fixed fees; 4c. contingent fees; 4d. retainer to be held in trust and charged against on an hourly basis; 4e. interest charges; and 4f. pledge of security or collateral. Despite calling this a "form," Priddle indicated he made specific changes to the document to reflect the circumstances of Duarte's cash payment. He also testified that he took out the statement about nonrefundable retainers after Ethics Rule 2009-1 was issued and that bar counsel had reviewed his fee agreeement.

Exhibit J reflects the initials "KM" at paragraphs 4b and 4e. The document also purports to be executed by Kalindi McAlpine. Paragraph 4b states:

> Client shall pay this flat fee upfront regardless of whether this
> matter goes to trial; client enters a change of plea; or the

matter is dismissed and/or resolved by the court. This flat fee is for attorney representation only at the trial court level only. For purposes of appeal, which is a separate, independent matter, another attorney fee shall be required. This flat-rate is earned and owing upon execution of this fee agreement. The flat fee only covers services of the attorney and staff in office. Outside costs such as discovery, experts, depositions, etc. are not included in this flat-rate fee and remain the responsibility of the client. Should such costs be advanced by attorney for the purpose of efficiency, costs are to be repaid to attorney, subject to the terms contained herein. THIS FLAT-RATE FEE, OR ANY PART THEREOF, IS NON-REFUNDABLE AND WILL NOT BE REFUNDED/ RETURNED UNDER ANY CIRCUMSTANCES. Client/ client's representative verifies and warrants that the funds paid by them in this matter are their personal funds and required/earned in normal course through legitimate enterprise and the normal stream of commerce.

McAlpine testified that she recalled signing a one-page fee agreement and not a three-page agreement that is reflected by Exhibit J. She also testified that the agreement did not reflect the prior verbal agreement of the parties with the fees ranging from $25,000 to $50,000 to $75,000 depending upon whether the case went to trial and whether experts were hired. McAlpine said that the signature on Exhibit J and the initials that are found on paragraphs 4b and 4e of the agreement look like her signature and initials, but she repeatedly testified she could not confirm their authenticity without a handwriting expert.

Priddle testified that this is his standard contract similar to the one he still uses today. He testified in response to questions that he has removed the language in capital letters, but that the sentence reading "This flat-rate is earned and owing upon execution of this fee agreement" remains in his contract. The panel requested a copy of his current fee agreement which he failed to provide before the close of evidence.

McAlpine requested a copy of the fee agreement between Priddle and Joyce del Rosario (witness, prior client, and prior employee of Priddle) which was also not provided before the close of evidence.

Both parties agreed that McAlpine left the office after signing a written agreement. She returned later the same day or the next day to give Priddle $75,000 in cash to undertake the representation of Duarte. Priddle testified that McAlpine actually brought $92,000 in cash in a plastic grocery sack. He later returned $17,000 to McAlpine.

Almost everything in this case about the fee agreement was subject to dispute by the parties except the fact that Priddle received $75,000 in cash from McAlpine. This was somewhat surprising to the Panel in light of the fact that no other witnesses were present and no receipt for the cash was given to McAlpine by Priddle. Priddle is legally blind and it was puzzling to the Panel how Priddle was able to count out and verify the accuracy of such a large cash transaction. When questioned about this by the Panel, Priddle said that his wife might have assisted him in counting the money but he couldn't recall.

McAlpine and Duarte believed that Priddle changed the terms of the original fee agreement with the "$25,000/$50,000/$75,000" arrangement to a fixed fee arrangement with the intent to defraud them. They testified that they were never provided a copy with the fee agreement until this fee arbitration commenced. They also argued that Priddle misrepresented his expertise as a federal drug attorney, used unscrupulous and unethical conduct in attaining the representation fee, failed to properly represent Duarte, used scare tactics to get the retainer, urged Duarte to change his plea on the day of trial, and committed malpractice in the representation.

The Petition sought the return of $50,000 of the retainer because Duarte entered a change of plea on the morning of trial and the case was never tried.

## III.    Findings and Conclusions about the Contract

The Panel found it believable that neither McAlpine nor Duarte was given a copy of the agreement at or near the time it was signed, even though Priddle testified otherwise. McApline and Priddle were alone when the agreement was signed. Money changed hands at a subsequent meeting. It seems likely that Priddle didn't take time or was too caught up in taking the large cash payment to make a copy for McAlpine at that time. Priddle produced no letters of transmittal to either Duarte or McAlpine showing that the agreement was subsequently mailed to either of them. The panel believes that the failure to provide a copy of the agreement to the clients at the time it was signed or shortly thereafter helped open the door to this dispute.

The written fee agreement on its face violates Ethics Opinion 2009-1 which concludes that it is misleading to describe a fee retainer in any way as "non-refundable." Although this agreement was entered into prior to the publication of Ethics Opinion 2009-1, Rule 1.5(a) was in effect and remained unchanged between 2008 and the time that Ethics Opinion 2009-1 was issued.

The Panel found credible the Petitioner's testimony that Priddle counseled Duarte and McAlpine that if the government obtained a search warrant and discovered a large amount of cash, it would likely be confiscated as evidence in the case and could perhaps link McAlpine to the conspiracy. Priddle inserted language in the fee agreement in two places that indicated the funds were McAlpine's "personal funds and acquired/earned in the normal course through legitimate enterprise and through the normal stream of commerce." The Panel is concerned about ethical implications when an attorney has reason to believe that the cash used to pay a retainer was earned through illegal means or constitutes evidence of the crime that the client is charged with.

McAlpine testified that at the time she hired Priddle, she didn't think she was thinking straight and she was worried about her boyfriend in jail. She testified that,

"I usually think rationally, but not then." Overall, the Panel found McAlpine to be an articulate and organized advocate. For an untrained advocate, she did a credible job of preparing her case, cross-examining witnesses, articulating her arguments and advocating in a clear and direct style. It was also clear from the testimony of Priddle's prior staff members that McAlpine had been intimately involved in assisting with the case, including performing research on mitigating factors to apply at sentencing and being in regular contact with the office. But the Panel did find it believable that McAlpine was likely under a great deal of stress at the time her boyfriend was arrested, and she was arranging to hire an attorney for the defense. The Panel could understand how the cash was probably weighing on her. The fact that she actually brought $92,000 to Priddle who counted out $75,000 and returned $17,000 to McAlpine, indicates that the cash had become something of a "hot potato" for her.

Ultimately the Panel concluded that there was nothing about Exhibit J that would suggest that it was falsified, manufactured, or otherwise not executed by McApline. The Panel found Priddle's testimony more believable than McAlpine's about whether she signed the agreement. The Panel did not find McAlpine's or Duarte's testimony credible that the agreement was a forgery or fraudulently induced by Priddle. Moreover, McAlpine lost credibility when she declined to confirm the signature and initials that appear on the document. Finally, the Panel was unable to conclude that McAlpine's or Duarte's subjective understanding of the fee agreement should supersede the written terms of the agreement.

Therefore, the Panel concludes that Exhibit J accurately reflected the terms of the fee agreement entered into between the parties. In that regard, Exhibit J satisfied the requirement of the Code of Professional Conduct that fee all agreements be in writing. On its face, the fee agreement clearly contemplates a fixed fee and not a

graduated fee depending upon whether the case went to trial or whether experts were engaged.

## IV. Reasonableness of the Fees under Bar Rule 35(a).

Having concluded that the parties agreed to a $75,000 fixed fee the Panel turned to the question of the reasonableness of the fees under Bar Rule 35(a).

Priddle testified that he and his staff did not keep track of time or track the hours incurred in the case because it was not an hourly engagement. Consequently the Panel did not have very sound evidence upon which to judge the reasonableness of the fee. The Panel declined to adopt the view that the attorney must always keep track of hours worked in order to justify the reasonableness of the fee if there is ever a dispute. Such a rule seems to contradict at least one of the reasons for charging a fixed fee and might serve to discourage attorneys from exploring ways to provide clients with value for services outside the realm of the billable hour. On the other hand, Priddle did a poor job of trying to demonstrate the amount of time spent on the matter or otherwise apply the reasonableness standards found in Bar Rule 35(a). He made no effort to try and re-create his time or the time of his staff.

Ultimately the evidence offered by the parties about the reasonableness of the fee was largely circumstantial and conclusory. McAlpine testified that based upon her observation of the case, she didn't think that Priddle put in more than 35 hours on the low side and maybe as many as 100 hours on the high side in this case. Priddle testified that he spent hundreds of hours on the case.

Neither of these estimates by the parties was particularly helpful to the Panel. A client doesn't know how much time an attorney spends working on a case because so much work is done outside the presence of the client. By the same token, attorneys rarely know how much time they spend on a matter unless they carefully track the hours. In the end, the Panel relied largely upon the circumstantial evidence, common

sense, and the testimony of Priddle's former staff members to discern the reasonableness of the fee.

It appears that the representation of Duarte lasted at least ten months between the federal case and the state probation revocation case. The original engagement took place in mid-November of 2008, and the case was scheduled for trial on February 9, 2009. The Panel found Priddle's testimony believable that he was prepared to take the case to trial and that Duarte decided to change his plea on the morning of trial because his co-defendant had changed his plea the week before. Duarte's defense was based upon sketchy identification evidence and Priddle was confident that he could raise a reasonable doubt about the identification of Duarte in the minds of the jurors. However, once the co-defendant changed his plea, Priddle testified that he and Duarte were concerned that the co-defendant would be called by the prosecutor to identify him as having participated in the illegal drug transaction. Duarte testified that his co-defendant would never have testified against him at trial.

The Panel found Priddle's testimony more credible than Duarte or McAlpine that the Change of Plea resulted from Duarte's fear of going to trial after his co-defendant changed his plea rather than because of pressure brought by Priddle on Duarte.

Following the change of plea, Priddle and his staff testified that substantial time was spent researching and preparing for the sentencing hearing. The main issue of concern to Duarte in this case was a federal law setting a mandatory minimum sentence of ten years for his offense. That mandatory minimum was apparently the subject of pending legislation that would have reduced the mandatory minimum from ten years to five years if Duarte were sentenced after the legislation was passed. Moreover, there were a number of mitigating factors that Priddle hoped might convince the judge to give less than the mandatory minimum even though the statute provided otherwise. Priddle

and his staff testified that they had regular telephone conversations with McAlpine about the sentencing and that at her urging Priddle's office contacted a number of attorneys around the country faced with a similar problem in an effort to get around the mandatory minimum sentence.

The Panel found Priddle's witnesses who testified that he had spent substantial time on this case credible. None of these witnesses currently work for Priddle. All were former staff members and did not have a reason to lie for Priddle. Nicoli Bailey, a paralegal with 25 years of experience testied that although she did not have extensive experience in criminal law, based on her experience in complex civil matters, a $75,000 fee was not unreasonable for the amount of time that was spent on Duarte's case by Priddle and the paralegals. None of the witnesses could identify any specific amount of time with any certainty however. They testified to ball park numbers of hours and numbers of visits to the jail to visit Duarte, and they tried to estimate approximate lengths of time such tasks took, but they all admitted that their memories were not precise. The witnesses corroborated that Priddle was prepared to try the case and gave Duarte's case substantial time and attention

The witnesses all testified that they did not keep any record of time spent on the case, gas logs for court trips and jail visits, or any other form of documentation on time and expenditures made for this case. They testified that they did keep time records for the civil cases in the offices.

Priddle also produced a large volume of un-indexed file documents to support his claim that he earned his fee in this case. Those documents included approximately 150 pages of discovery in the federal case, 65 pages of mental health records, information about a failed attempt to secure third-party custody release for Duarte, the transcript from the 33-minute change of plea court hearing, documents from the State parole revocation case that demonstrated there had been six brief state hearings

and one five-page sentencing memorandum submitted to the state court, and finally approximately 300 pages of pleadings from the federal case, including routine motions and requests for extensions. The pleadings demonstrated that Mr. Priddle filed a seven-page motion to suppress the evidence identifying Duarte, and a five-page sentencing memorandum with 18 pages of later-filed addendums.

Therefore the Panel concluded that $75,000 was a reasonable fee to charge in this case based upon all of the factors contained in Bar Rule 35(a).

## V. Referral to Bar Counsel

The Panel determined this case should be referred to bar counsel to investigate whether disciplinary proceedings are appropriate. The issues identified by the Panel that warrant investigation by bar counsel include:

1. Whether the "non-refundable" and "already earned" language in the fee agreement signed by the parties in this case should result in any disciplinary proceedings even though the Panel concluded that this fee was ultimately reasonable under Alaska Bar Rule 35(a). Such language misleads clients about their ability to fire an attorney and obtain a refund so they can seek other represention. Furthermore, Priddle testified that he continues to believe that such a fee is earned when paid, and that he does not place the retainer in a trust account.

2. Whether an attorney has any ethical obligations when a retainer is paid in cash in a case where the lawyer might likely conclude that the money was obtained from illegal sources or might be evidence in the case in which the attorney is retained.

Dated June 2, 2011                      /s/ Richard H. Foley, Jr.

Dated June 15, 2011                     /s/ Valerie Brown

Dated June 8, 2011                      /s/ Mary Kay Arthaud

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | | |
|---|---|---|
| KALINDI McALPINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3AN-12-04798 CI |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN PRIDDLE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER[*]

## I.    INTRODUCTION

Jierum J. Duarte was arrested and charged in a federal drug case. Duarte directed his girlfriend, Plaintiff Kalindi McAlpine, to retain attorney Steven Priddle to represent Duarte in the federal case and a concurrent state criminal proceeding. McAlpine paid Priddle $75,000 in cash for his services. Ultimately Duarte's case did not go to trial as he changed his plea on the morning trial was set to commence.

After the conclusion of Priddle's representation, McAlpine brought an attorney fee dispute with the Alaska Bar Association pursuant to Alaska Bar Rule 34(b). McAlpine sought a return of $50,000 from the amount paid to Priddle.

McAlpine contended the parties had agreed to a graduated fee arrangement whereby Priddle would receive $25,000 if the case did not go to trial; $50,000 if the case went to trial but no experts were hired; and $75,000 if the case went to trial and experts

---

[*]    This decision has been edited to conform to the technical rules of the Alaska Supreme Court.

were hired. Priddle contended the parties had agreed to a $75,000 flat fee for the representation regardless of whether the case went to trial.

The matter was submitted to the Bar Association's Fee Review Committee for arbitration. The Fee Review Committee held an arbitration hearing. Both parties called witnesses and had the opportunity to cross-examine the witnesses against them. The arbitration panel released its opinion on June 15, 2011. The panel relied on a written and executed document produced by Priddle in finding the parties' fee agreement was for a $75,000 flat-rate fee and concluded the fee was reasonable under Bar Rule 35(a). McAlpine requested modification of the panel's decision, which was denied on September 9, 2011. McAlpine filed the present motion to modify the arbitrator's decision in superior court.

## II. STANDARD OF REVIEW

This action is governed by the Revised Uniform Arbitration Act.[1] The Alaska Supreme Court has counseled that judicial review of arbitration awards is "closely circumscribed."[2] The superior court has limited authority to review awards and may only vacate, modify, or correct an arbitration award pursuant to "narrow statutory parameters."[3] The court may not review the arbitrator's decision on its merits.[4] The arbitrator's findings of fact and law must be given great deference and the court is

---

[1]    *See* Alaska Bar Rule 40(t); *Haeg v. Cole*, 200 P.3d 317, 318 (Alaska 2009).

[2]    *Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 447 (Alaska 2008).

[3]    *Id.*

[4]    *A. Fred Miller v. Purvis*, 921 P.2d 610, 618 (Alaska 1996).

"loathe to vacate an [arbitration] award."[5]  The arbitrator's findings of fact are unreviewable, even in the case of gross error.[6]

Under the Act, an arbitration award may be challenged in superior court through an application to vacate the award[7] or an application to modify or correct the award.[8]  The statutory grounds for vacating an award are:

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) there was evident partiality by an arbitrator appointed as a neutral arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conduct the hearings contrary to [the Uniform Arbitration Act], so as to prejudice substantially the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers;
>
> (5) there was not an agreement to arbitrate . . . ; or
>
> (6) the arbitration was conducted without proper notice [under the Arbitration Act] so as to prejudice substantially the rights of a party to the arbitration proceeding.[9]

An award may be modified or corrected under the following circumstances:

---

[5]    *Butler v. Dunlap*, 931 P.3d 1036, 1038 (Alaska 1997).

[6]    *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989).

[7]    *See* AS 09.43.500.

[8]    *See* AS 09.43.510.

[9]    AS 09.43.500(a).

(1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;

(2) the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision on the claims submitted; or

(3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.[10]

Therefore the court may vacate or modify the award only if it finds that she has proven factors under AS 09.43.500 or AS 09.43.510.[11]

## A.    McAlpine's Arguments

McAlpine generally asks the court to review the merits of the arbitration panel's decision including many points falling outside the narrow statutory parameters for modifying or vacating an award. She does not contend, for example, that the arbitration process was flawed or that the arbitrators themselves were unsuitable. Nor does she contend that the arbitrators made a mathematical or clerical error in their decision. Each of McAlpine's arguments are examined below.

### 1.    The arbitration panel did not analyze the reasonableness of the fee in relation to work actually performed.

The arbitration panel noted that: Priddle's representation lasted ten months; Priddle was prepared to take the case to trial; Priddle spent a substantial amount of time on the issue of Duarte's sentence; some of Priddle's former employees testified Priddle

---

[10]    AS 09.43.510(a).

[11]    McAlpine titled her motion a "motion to modify" the arbitration award, but the remedy she requests is more consistent with a motion to vacate the award. Thus the Court will treat McAlpine's motion as a motion to modify or vacate the award.

spent a substantial amount of time on the case; and Priddle produced several hundred pages of documents and pleadings related to Duarte's case to show his fee was earned.[12] These findings of fact are not reviewable by this court.

**2. In determining the reasonableness of the fee charged, the arbitration panel did not weigh the fact that neither McAlpine nor Duarte was given a copy of the fee agreement.**

The arbitration panel found it believable that neither McAlpine nor Duarte was given a copy of the fee agreement at the time it was signed.[13] The panel noted that Priddle's failure to provide a copy of the agreement likely opened the door to the dispute over what fee arrangement the parties had agreed to but concluded the written fee agreement accurately reflected the fee agreement entered into between the parties. This finding is not reviewable.

**3. Priddle misled his client on his experience.**

The panel was aware of and considered Duarte's and McAlpine's testimony that they were misled as to Mr. Priddle's experience handling federal drug cases.[14] Priddle denied making any representations as to any special expertise.[15] The panel's factual finding regarding this issue is not reviewable.

**4. Priddle's fee was not reasonable.**

McAlpine repeatedly asserts that the arbitration panel erred in finding that Priddle's fee was reasonable. The court must give great deference to the panel's legal

---

[12] *See* Opinion of Arbitrators [Appendix A at 9-13].

[13] Opinion of Arbitrators [Appendix A at 7].

[14] *See* Opinion of Arbitrators [Appendix A at 3-4].

[15] Opinion of Arbitrators [Appendix A at 4].

conclusions and cannot review its factual findings. While McAlpine may believe the evidence favored her position, it is not within the scope of the court's review.

### 5. Priddle did not provide an accounting of the time he spent on the case.

The arbitration panel noted that the evidence offered by the parties as to the reasonableness of the fee was largely circumstantial and conclusory but found Priddle's testimony believable and supported by other evidence.[16] These factual findings are not reviewable.

### 6. McAlpine contends the panel could not assess the reasonableness of the fee without proper timekeeping records.

The arbitration panel declined to find that an attorney must keep track of time spent on a case when charging a flat fee.[17] The panel reasoned that requiring otherwise would contradict the very point of charging a flat fee. The court must give deference to this legal conclusion. The panel ultimately determined that it could assess the reasonableness of the fee through other evidence.

### 7. The arbitration panel should have held Priddle to a higher standard.

McAlpine contends, as a matter of policy, that the bar must hold attorneys to a higher standard than the arbitration panel did in assessing the reasonableness of the fee charged. The panel's determination to uphold the fee, notwithstanding ethical issues with the fee agreement, lack of formal timekeeping, or other shortcomings alleged by McAlpine, is not reviewable by this court.

---

[16] Opinion of Arbitrators [Appendix A at 10-13].

[17] Opinion of Arbitrators [Appendix A at 9-10].

**8. The panel should have given greater weight to the fact that the fee agreement contained provisions in violation of the rules of professional conduct.**

The arbitration panel referred the case to bar counsel to determine whether disciplinary proceedings were appropriate but still found the fee reasonable under Alaska Bar Rule 35(a).[18] This finding is not reviewable by this court.

**9. Priddle coerced his client into making decisions and statements using fear tactics.**

The panel considered Duarte's testimony that he was coerced into taking a plea bargain in assessing the reasonableness of the fee charged. The panel found Priddle's testimony more credible on this point and determined that Duarte likely changed his plea due to his fear of going to trial after his co-defendant pled out (because the co-defendant might testify against Duarte).[19] The court may not review this finding by the panel.

The panel found credible Priddle counseled McAlpine that if a large amount of cash was discovered it would likely be confiscated and could perhaps link McAlpine to a conspiracy and was concerned about taking a retainer that may have been earned through illegal means.[20] However the court may not reweigh the panel's evaluation of the evidence.

**10. The fee agreement document was fraudulent.**

The only argument McAlpine presents that superficially meets one of the statutory parameters set forth in AS 09.43.500 or AS 09.43.510 is that the award was procured by the alleged fraudulent actions of Priddle. McAlpine contends the fee

---

[18]   Opinion of Arbitrators [Appendix A at 13].

[19]   Opinion of Arbitrators [Appendix A at 11].

[20]   Opinion of Arbitrators [Appendix A at 8].

agreement document Priddle presented at the arbitration hearing was a forgery. McAlpine attacks the arbitration panel's finding of fact that the fee agreement document was not falsified, manufactured, or otherwise illegitimate. This finding is not reviewable by the court.

## III. CONCLUSION

McAlpine has not established any of the statutory grounds to vacate or modify an arbitration award as set forth in AS 09.43.500 or .510. McAlpine's motion is therefore DENIED. The arbitration award is confirmed. Priddle is directed to submit a proposed entry of judgment pursuant to AS 09.43.520.

DATED at Anchorage, Alaska this 7th day of September, 2012.

/s/ Paul E. Olson
Superior Court Judge